1

2

3

4

5 **UNITED STATES DISTRICT COURT**

6 **NORTHERN DISTRICT OF CALIFORNIA**

7

8 | **SARAH STONEHOCKER,** | CASE NO. 19-cv-02494-YGR

9 | Plaintiff,

10 | vs. | **ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

11 | **KINDRED HEALTHCARE OPERATING, LLC,** | Re: Dkt. No. 18

12 | Defendant.

13     Plaintiff Sarah Stonehocker brings this putative class action against defendant Kindred

14 Healthcare Operating, LLC alleging claims under California law for failure to pay overtime

15 wages, failure to pay wages when due, and unlawful business practices. Defendant now moves for

16 an early summary judgment on grounds that (i) plaintiff is bound by the judgment and dismissal

17 entered in *Cashon v. Kindred Healthcare Operating, Inc., et al.*, Case No. 3:16-cv-04889-RS

18 ("*Cashon*"), and thus, plaintiff's claims are barred by the doctrine of claim preclusion[1]; and (ii)

19 plaintiff released her right to bring the claims asserted in this action through the Class Action

20 Settlement Agreement and Stipulation approved by the court in *Cashon*. (Dkt. No. 18 ("MSJ").)

21     Having carefully reviewed the pleadings, the papers and evidence submitted, and oral

22 argument, and for the reasons set forth more fully below, the Court **DENIES** defendant's motion for

23 summary judgment.

24

25     [1] Although the parties' briefing refers to this as the doctrine of "res judicata," the Ninth

26 Circuit has indicated that term is outdated. *NTCH-WA, Inc. v. ZTE Corp.*, 921 F.3d 1175, 1178,
n.1 (9th Cir. 2019) ("The terms 'claim preclusion' and 'issue preclusion' 'have replaced a more

27 confusing lexicon.' . . . . The term 'res judicata' refers 'collectively' to claim and issue
preclusion.") Here, defendant's motion is concerned with "claim preclusion," and thus, for clarity,

28 the Court uses this term throughout.

1    **I.      BACKGROUND**

2             **A.       Plaintiff and the Present Action**

3             Plaintiff filed the instant wage-and-hour putative class action on February 14, 2019,

4    asserting claims arising from defendant's failure to pay wages and overtime to "skilled clinicians"

5    who worked at defendant's skilled nursing facilities ("SNFs") throughout the state.  (Dkt. No. 1-2;

6    Dkt. No. 1-4 ("FAC") ¶ 1.)  More specifically, plaintiff alleges that defendant required skilled

7    clinicians working at its SNFs to maintain minimum patient care ratios ("PCR"), pursuant to

8    which they had to spend at least 87 percent of their shift time on "skilled direct patient care."

9    (FAC ¶¶ 8-9.)  Plaintiff alleges that in order to meet these productivity requirements and complete

10   certain necessary unskilled work, skilled clinicians "performed unpaid and undocumented

11   overtime work."  (*Id*. ¶ 11.)

12            In the FAC, plaintiff asserts causes of action against defendant for failure to pay overtime,

13   failure to pay wages when due, and unlawful business practices, seeking to represent the following

14   class:

15           All individuals who worked for Kindred as skilled clinicians (including physical
         therapists, occupational therapists, and speech therapists) at Kindred skilled
16       nursing facilities in California from four years preceding the initial filing of this
         action through the final disposition of this action.
17

18   (*Id*. ¶¶ 14, 19-31.)  Plaintiff herself worked as an occupational therapist for defendant in two

19   capacities.  First, plaintiff worked for Kindred Rehab Services, Inc. ("Kindred Rehab") from

20   approximately October 31, 2006 through October 16, 2016.  (Dkt. No. 22-1, Plaintiff's Responsive

21   Separate Statement of Undisputed Material Facts ("UMF"), No. 2.)  During this period, Kindred

22   Rehab, a direct subsidiary of defendant, offered skilled clinician services at various of defendant's

23   SNFs.  (*Id*., No. 3-4.)  As an occupational therapist for Kindred Rehab, plaintiff was paid on an

24   hourly basis.  (Dkt. No. 22-3 ("Stonehocker Decl.") ¶ 2.)  Second, beginning approximately

25   October 17, 2016, plaintiff worked for Professional Healthcare at Home, LLC ("PHH"), an

26   indirect subsidiary of defendant offering skilled clinician services in the home healthcare setting.

27

28

2

(UMF, No. 5-7.)[2]  As a home healthcare occupational therapist, plaintiff was compensated using a combination of a piece rate structure and other methods.  (Stonehocker Decl. ¶ 4; Dkt. No. 23-1 ("VanRude Decl.") ¶ 3.)[3]

### B.     The *Cashon* Action

On August 24, 2016, Valerie Cashon filed a putative class action against defendant,[4] also arising from defendant's wage-and-hour practices.  (UMF, No. 8.)  In the operative second amended complaint ("SAC"), Cashon, who allegedly worked as an occupational therapist for defendant, asserted thirteen causes of action, including failure to pay piece rate employees for rest and meal breaks and nonproductive time, failure to pay for all hours worked, failure to pay minimum wage, failure to keep accurate payroll records, failure to pay overtime compensation, waiting time penalties, failure to reimburse for business expenses, and violation of the Private Attorney General Act of 2004 ("PAGA").  (Dkt. No. 18-7 ("RJN"), Ex. C, ¶¶ 31-105.)[5]  Cashon purported to bring these claims on behalf of herself and a class comprised of the following:

> All Clinicians and Piece Rate Employees who at any time during the four years preceding the filing of th[e] complaint and/or during its pendency were employed by [d]efendants in California.

(*Id.* ¶ 2.)  The SAC defined "Clinicians" as "Occupational Therapists, Occupational Therapist Assistants, Physical Therapists, Physical Therapy Assistants, Registered Nurses, License Vocational Nurses, Media Social Workers, Speech Therapists, and other Clinicians that are paid

---

[2] Kindred Rehab has been a direct subsidiary of defendant since at least August 24, 2012. (UMF, No. 4.)  PHH was an indirect subsidiary of defendant from August 24, 2012 and April 20, 2018.  (*Id.*, No. 7.)

[3] Plaintiff's employment with PHH ended on December 28, 2019, and she is no longer employed by defendant or any entity affiliated with defendant.  (Stonehocker Decl. ¶ 5.)

[4] *Cashon* also named as a defendant Gentiva Certified Healthcare Corp., which is not a party to the instant action.

[5] In support of its motion, defendant requests that the Court take judicial notice of certain pleadings and orders filed on the public docket in *Cashon*.  (Dkt. No. 18-7.)  Federal courts "may take judicial notice of court filings and other matters of public record."  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746, n.6 (9th Cir. 2006) (citing *Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank,* 136 F.3d 1360, 1364 (9th Cir. 1998)).  Accordingly, defendant's request for judicial notice is **GRANTED**.

3

1  by Piece Rate." (*Id.* ¶ 12.) The SAC further alleged that class members were assigned to work "in

2  private homes and in facilities throughout California." (*Id.* ¶ 23.)

3       On April 20, 2018, Judge Richard Seeborg, the presiding judge in *Cashon*, granted

4  preliminary approval of a class action settlement entered into by the parties. (UMF, No. 14.) The

5  settlement agreement defined the class as follows:

6       All persons who were employed by either Kindred Healthcare Operating, Inc. or
     Gentiva Certified Healthcare Corp. or one of its/their direct or indirect

7       subsidiaries to provide skilled home health care services in California as
     Clinicians or piece rate employees at any time from August 24, 2012 through and

8       including the date the Preliminary Approval Order is entered by the Court.

9  (*Id.*, No. 19.) "Clinicians" was defined as "per diem, part-time and full-time home health aides,

10  occupational therapists, occupational therapist assistants, physical therapists, physical therapy

11  assistants, registered nurses, licensed practical nurses, licensed vocational nurses, medical social

12  workers, nursing assistants, speech/language pathologists, speech/language therapists, and other

13  clinicians paid on an hourly or per visit basis." (*Id.*, No. 20.) The settlement period was defined

14  as August 24, 2012 through the date of preliminary approval, which was April 20, 2018. (*Id.*, No.

15  16.) Settling class members were to be compensated based on "[d]ays [w]orked" "in the home or

16  hospice setting." (*Id.*, Nos. 50, 55.)

17       The settlement agreement also contained the following release provision:

18
19       As of the Effective Date and to the maximum extent permitted by law, the
     Plaintiff, and all Plaintiff Class Members (i.e., all Class Members who do not
     properly opt-out) and all persons purporting to act on the Plaintiff Class

20       Members' behalf or purporting to assert a claim under or through them, hereby do
     and shall be deemed to have fully, finally, and forever released, settled,

21       compromised, relinquished and discharged any and all of the Released Parties of
     and from any and all of the following claims:

22
23       a.     all disputes, claims, and/or causes of action pleaded or which could
     have been pleaded in and arising from the facts, claims and/or allegations in the

24       Complaint and Plaintiff's August 23, 2016 and September 20, 2016 letters to the
     LWDA concerning Defendant(s), and all claims (including penalties arising from

25       such claims) under Cal. Labor Code §§201-203, 226, 226.2, 226.3, 226.7, 218.5,
     510, 512, 558, 1174, 1174.5, 1194, 1194.2, 1194.3, 1197, 1197.1, 2802, Cal. Civil

26       Proc. Code § 1021.5, Cal. Bus. & Prof. Code §§ 17200 et seq., California IWC
     Wage Orders, the Minimum Wage Orders, the Fair Labor Standards Act,

27       damages, penalties, interest, attorney's fees, costs, and other amounts recoverable

28       under the causes of action under California law and/or federal law, and interest,

attorney's fees and costs based in whole or in part on the allegations and/or claims in the Action during the Settlement Period; and

b.     all claims of any and every nature based on off-the-clock work, minimum wage, overtime, meal and rest break claims, paycheck-related claims, payroll records maintenance, wage statement claims, business expense reimbursement claims, waiting time penalties, California IWC Wage Order claims and Unfair Competition Law claims that arose during the Settlement Period.

(*Id*., No. 15.)[6]

On June 4, 2018, the claims administrator mailed notices of settlement, claims forms, and checks to class members, including the plaintiff in the instant action. (*Id*., No. 22.) The notice stated in several places that only those who provided home health care services would be affected by the settlement. (*Id*., No. 51, 53-55.) Further, the claim form sent to plaintiff estimated that she performed work "as a Clinician or piece rate employee" for defendant "in the home health or hospice setting for 346 days between August 24, 2012 and April 20, 2018," and accordingly, her estimated share of the settlement was $4,801.56. (Dkt. No. 18-1 ("Cita Decl."), Ex. A.) Plaintiff did not object to or request exclusion from the settlement by the stated deadline of July 19, 2018. (UMF, No. 23-24.) Judge Seeborg granted final approval of the settlement on September 4, 2018. (*Id*., No. 14.) The claims administrator mailed plaintiff a check for her portion of the class settlement, in the amount of $6,790.83, on November 2, 2018. (Cita Decl. ¶ 9.) Thereafter, plaintiff cashed the check. (*Id*.)[7]

## II.   LEGAL STANDARD

Summary judgment is appropriate where the pleadings, discovery, and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On summary judgment, the court draws all reasonable factual inferences in favor of the nonmoving party. *Id*. at

---

[6] The released parties included defendant and its current and former parents, subsidiaries, affiliated and related companies and entities. (UMF, No. 17.)

[7] On May 30, 2019, this Court issued a *sua sponte* order of referral to Judge Seeborg to consider whether *Cashon* and the instant action were related. (Dkt. No. 12.) On May 31, 2019, Judge Seeborg determined that the cases were not related. (Dkt. No. 14.)

255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738-39 (9th Cir. 1979).

The party moving for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330-331 (1986). Once the movant has made this showing, the burden shifts to the nonmoving party to identify specific evidence showing there is a genuine issue of material fact for trial. *Id.* at 332, n.3. If the nonmoving party cannot do so, the movant "is entitled to . . . judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Id*. at 323 (internal quotations omitted).

**III.    ANALYSIS**

Defendant claims it is entitled to summary judgment because (1) plaintiff's claims are barred by claim preclusion in light of the *Cashon* litigation and settlement; and (2) plaintiff's claims are barred by the terms of the release contained in the *Cashon* settlement agreement. The Court addresses each argument in turn.

**A.    Claim Preclusion**

First, the Court must determine whether plaintiff is barred by the doctrine of claim preclusion from asserting her claims in this action.

The doctrine of claim preclusion "precludes parties or their privities from relitigating a cause of action that has been finally determined by a court of competent jurisdiction." *See Acuna v. Regents of Univ. of Cal.*, 56 Cal. App. 4th 639, 648 (1997) (citation omitted).[8] For the doctrine to apply, the following requirements must be met: (1) the decision in the prior proceeding is final and on the merits; (2) the present action is based on the same cause of action as the prior proceeding; and (3) the parties in the present action or parties in privity with them were parties to

_____

[8] The parties agree that to determine the preclusive effect of a prior action on a subsequent case, California law applies. (*See* Motion at 8, n.5; Opp. at 10.)

6

United States District Court
Northern District of California

1    the prior proceeding. *See Rangel v. PLS Check Cashers of Cal., Inc.*, 899 F.3d 1106, 1110 (9th

2    Cir. 2018); *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896-97 (2002). If the requirements

3    are met, claim preclusion bars the litigation of issues that were or could have been raised in the

4    prior proceeding. *Bullock v. Philip Morris USA, Inc.*, 198 Cal. App. 4th 543, 557 (2011). Even if

5    the requirements are established, however, claim preclusion "will not be applied if injustice would

6    result or if the public interest requires that relitigation not be foreclosed." *Consumer Advocacy*

7    *Group, Inc. v. ExxonMobil Corp.*, 168 Cal. App. 4th 675, 686 (2008) (internal quotations omitted).

8            Here, the parties agree that the first and third requirements are satisfied, that is, *Cashon*

9    resulted in a final decision on the merits and the parties in this case were parties to or in privity

10   with the parties in *Cashon*. (Motion at 9, 11-12; Opp. at 11.) Thus, the only issue before the

11   Court is whether this case is based on the same cause of action as *Cashon*, such that the second

12   requirement is satisfied.

13           Under California law, courts use the "primary rights" doctrine to ascertain whether two

14   cases involve the same cause of action. *See Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562,

15   575-76 (2010); *Manufactured Home Cmtys. v. City of San Jose*, 420 F.3d 1022, 1031 (9th Cir.

16   2005). Under the primary rights doctrine, a "cause of action" is "comprised of a 'primary right' of

17   the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant

18   constituting a breach of that duty." *Mycogen*, 28 Cal.4th at 904 (internal quotation and alterations

19   omitted). The "determinative factor" in the primary rights analysis is "the harm suffered," rather

20   than the legal theory advanced or the remedy sought. *Villacres*, 189 Cal. App. 4th at 576-77.

21   Moreover, "even though two suits involve the same nucleus of facts, they do not necessarily raise

22   the same cause of action under California law." *Maldonado v. Harris,* 370 F.3d 945, 953 (9th Cir.

23   2004) (citing *Morris v. Blank,* 94 Cal.App.4th 823 (2001)). "If the 'primary right' sought to be

24   vindicated in a subsequent suit is the same as that in an earlier suit, the second action will be

25   precluded under California law." *Id*. at 952.[9]

26

27           [9] Plaintiff contends that in addition to the primary rights approach, courts in the Ninth
     Circuit analyzing the second claim preclusion requirement also consider whether claims in the

28   relevant actions have an "identical factual predicate." (Opp. at 11.) Plaintiff does not point to any

                                                 7

1    Defendant avers that this action and *Cashon* both arise from the same primary right of

2    defendant's clinicians to be "pa[id] all wages owed for total hours worked, including overtime

3    compensation" and "pa[id] all wages due at termination."  (Motion at 11; Reply at 4.)  Plaintiff

4    counters that *Cashon* and this action involve separate, distinct primary rights, emphasizing that the

5    cases arise from work performed by different putative classes, in different settings, for different

6    direct employers, using different pay structures.  (Opp. at 15.)

7    To resolve this dispute, the Court must compare the complaints in the two actions,

8    focusing on "the facts pleaded and the injuries alleged."  *Adam Bros. Farming v. Cty. of Santa*

9    *Barbara*, 604 F.3d 1142, 1149 (9th Cir. 2010).  The first amended complaint in this case, like the

10   operative complaint in *Cashon*, alleges that defendant failed to pay due wages to members of the

11   class, which includes physical therapists, occupational therapists, and speech therapists.  (FAC

12   ¶ 1.)  The complaints diverge, however, on other critical allegations.  For example, unlike *Cashon*,

13   this action "arises from [defendant]'s strict and impracticable minimum Patient Care Ratio

14   ("minimum PCR") productivity standard," which allegedly resulted in systemic failure to pay for

15   overtime hours worked and to pay wages when due.  (*Id*.)  Plaintiff alleges that members of the

16   class were "typically required to see seven to twelve patients during their scheduled eight-hour

17   shifts," during which they performed "skilled direct care" and "unskilled ancillary work."  (*Id*.

18   ¶ 8.)  The complaint further alleges that in order to maintain the "minimum PCR," which was

19   "rigorously enforced," plaintiffs "perform[ed] unpaid and undocumented overtime work."  (*Id*.

20   ¶ 10.)  *Cashon* made no mention of PCRs.

21   Further, the Court is not persuaded by defendant's assertion that the *Cashon* class

22   encompasses the putative class in this action.  The clinicians here worked in defendant's "skilled

23   nursing facilities."  (*See id*. ¶ 14.)  The *Cashon* complaint defined the class to include "[a]ll

24   ***Clinicians and Piece Rate Employees*** employed by defendants," with "Clinicians" defined as

25   "Occupational Therapists, Occupational Therapist Assistants, Physical Therapists, Physical

26

27   California law in support of this proposition, however, and *Villacres* indicates that the primary
     rights approach alone applies.  Moreover, even if the identical factual predicate doctrine applied,
28   as explained herein, plaintiff's claims would not be barred.

8

1    Therapy Assistants, Registered Nurses, License Vocational Nurses, Media Social Workers,

2    Speech Therapists, ***and other Clinicians that [we]re paid by Piece Rate***." (RJN, Ex. C., ¶¶ 2, 12,

3    emphasis supplied.) These definitions contain redundancies, and as a result, are ambiguous as to

4    whether the *Cashon* plaintiff sought to represent all clinicians *and* all piece rate employees, or a

5    more limited class of clinicians who were paid by piece rate. In light of this ambiguity in the

6    complaint, it is appropriate to consider the class definition as set forth in the settlement. The

7    settlement class, unlike the class alleged in the complaint, includes employees compensated on a

8    piece rate, hourly, *or* per visit basis, but notably, is limited to clinicians who "provide[d] skilled

9    *home* health care services." (UMF, No. 19, emphasis supplied.)[10] Critically, this settlement class

10   definition excludes the putative class in this action, who worked in an SNF setting rather than a

11   home or hospice setting.[11]

___

[10] Defendant notes that the *Cashon* complaint refers to "nursing centers" and "facilities," suggesting that this Court should therefore interpret the complaint as including within its scope clinicians' work at SNFs. However, the *Cashon* complaint mentions "nursing centers" only in the context of describing defendant's full range of services and does not expand the scope of plaintiff's claims. (*See* RJN, Ex. C, ¶ 15 ("Defendant Kindred is a Delaware corporation, headquartered in Kentucky, and is a nationwide healthcare services company that through various subsidiaries operates transitional care hospitals, inpatient rehabilitation hospitals, nursing centers, assisted living facilities, a contract rehabilitation services business, and a home health and hospice business.").) Further, at the hearing on the motion, defendant's counsel clarified that the *Cashon* settlement was paid to employees who worked in SNFs *only if* they also provided home health care services.

[11] The Court notes that plaintiff worked as a clinician in defendant's SNFs until October 16, 2016, at which time plaintiff began working as a clinician in the home healthcare setting. Thus, the time period during which plaintiff's claims in this action arose (pre-October 16, 2016) is entirely separate from the time period for which plaintiff recovered in the *Cashon* settlement (i.e. post-October 16, 2016). Indeed, plaintiff was compensated for only 346 days of work during the nearly six-year *Cashon* class period, corresponding to the time when she worked in the home healthcare setting. (Cita Decl., Ex. A.)

Relatedly, plaintiff contends that *Cashon* and this action involve different employers because plaintiff worked for Kindred Rehab until October 16, 2016, after which she worked for PHH. (*See* Opp. at 15.) However, both actions name and make allegations as to Kindred Healthcare Operating, Inc. (now known as Kindred Healthcare Operating, LLC), without specifically referencing any of defendant's subsidiaries. Because the Court's primary rights inquiry must focus on the allegations in the complaints, *Adam Bros.*, 604 F.3d at 1149, unpleaded facts regarding subsidiaries who could have been named in this action (Opp. at 4, n.1) do not bear on the claim preclusion analysis. Rather, what matters for purposes of this analysis is that both

1    *Prieto v. U.S. Bank Nat. Ass'n*, No. CIV S-09-901 KJM EFB, 2012 WL 4510933 (E.D.

2    Cal. Sept. 30, 2012), on which plaintiff relies, is illustrative. There, defendant sought to bar a

3    plaintiff's wage-and-hour claims based on a prior class action settlement also involving wage and

4    hour claims. *Prieto*, 2012 WL 4510933, at *9. In the prior case, brought by defendant's hourly

5    employees, plaintiffs alleged that they were deprived of meal and rest periods and were not paid

6    for off-the-clock work. *Id*. In the case before the court, the complaint alleged that the defendant

7    had a policy of classifying certain employees as exempt, which resulted in defendant failing to pay

8    for meal and rest periods and overtime. *Id*. The court concluded that, although there was "much

9    overlap in the two actions, starting with the similarity of the facts and the Labor Code violations

10   presented through the requests for payment of lost wages," the cases involved different primary

11   rights. *Id*. The court reasoned that in the prior case, the harm "flowed from defendant's refusal to

12   pay hourly employees' wages due under the provisions of the Labor Code," whereas in *Prieto*, the

13   harm "flowed from defendant's alleged misclassification of plaintiff and could have occurred even

14   if it honored all its obligations . . . to hourly employees." *Id*. Thus, "[t]he harm in [*Prieto*] [wa]s

15   the misclassification, which led to the alleged failure to pay, while the harm in [the prior case] was

16   the failure to pay. *Id*.[12]

17   Likewise, *Cashon* and the action presently before this Court involve different primary

18   rights: While *Cashon* sought to redress defendant's failure to pay wages owed to clinicians

19   working in the home and hospice setting, the instant case seeks to redress defendant's enforcement

20   of productivity standards that resulted in clinicians at its SNFs being denied wages. Accordingly,

21

22

23

_____

24   actions allege harm caused by the same parent entity.

25   [12] Defendant argues that *Prieto*'s holding is "inconsistent with the primary right doctrine
     under California law, which does not require claims to have the same factual underpinnings to find
26   that they are the 'same.'" (Reply at 5-6.) Defendant's argument fails to persuade. The *Prieto*
     court specifically noted that it reached its "primary rights" determination *in spite of* similarities in
27   the factual basis for the two actions at issue, focusing on differences in the harms alleged. *Prieto*,
     2012 WL 4510933 at *9.
28

10

1    the second claim preclusion requirement has not been met.[13]  The doctrine of claim preclusion

2    does not bar plaintiff from proceeding with her claims.[14]

3            **B.**     ***Cashon* Settlement Release**

4            Next, the Court must determine whether defendant is entitled to summary judgment

5    because the *Cashon* settlement released plaintiff's claims.

6            As a threshold matter, the Court must resolve a dispute between the parties regarding the

7    applicable law for analyzing the release.  Defendant argues that California contract law applies

8    and urges the Court to disregard Ninth Circuit law, as articulated in *Hesse v. Sprint Corp.*, 598

9    F.3d 581 (9th Cir. 2010), which limits the enforceability of releases.  (Reply at 12-13.)  Plaintiff

10   contends that Ninth Circuit law governs, and in any event, California courts have articulated

11   comparable principles.  (Opp. at 20.)

12           The Court finds that the relevant California and Ninth Circuit laws are reconcilable, and

13   both apply to the Court's analysis in this case.  A class action release is a contract, and contract

14   interpretation is ordinarily a question of state law.  *See Navarro v. Mukasey,* 518 F.3d 729, 733

15   (9th Cir. 2008).  Under California law, a contract "must be so interpreted as to give effect to the

16   mutual intention of the parties as it existed at the time of contracting[.]"  *Id.* at 734 (quoting Cal.

17   Civ. Code § 1636).  In determining the parties' intention, courts consider the writing itself, as well

18

---

19           [13]  Because the claim preclusion requirements have not been met, the Court need not
20   consider whether public interest factors preclude application of the claim preclusion doctrine. *See*
     *Consumer Advocacy Group, Inc. v. ExxonMobil Corp.*, 168 Cal. App. 4th 675, 686 (2008) (public
21   interest may preclude application of claim preclusion even if the threshold requirements are
     established).

22

           [14]  The key cases on which defendant relies in arguing claim preclusion applies are
23   distinguishable because in each, the court found that the plaintiff could have brought its claims in
     the prior action.  *See Shine v. Williams-Sonoma, Inc.*, 23 Cal. App. 5th 1070 (Ct. App. 2018);
24   *Harris v. Best Buy Stores, L.P.*, 2018 WL 984220 (N.D. Cal. Feb. 20, 2018); *Villacres v. ABM*
     *Indus. Inc.*, 189 Cal. App. 4th 562 (2010).  In *Villacres*, for example, the court declined to decide
25   whether "every Labor Code violation and PAGA penalty involves a separate primary right," and
     instead found that under "the unique circumstances of th[e] case," the plaintiff's claims were
26   within the scope of the prior litigation such that plaintiff "could have attempted to assert his []
     claims as a member of the class" in the prior case.  189 Cal. App. 4th 562, 581, 584 (2010).  Here,
27   in contrast, plaintiff likely could not have brought her claims in *Cashon* because the complaint
28   was ambiguous regarding the class definition and the settlement excluded SNF clinicians.

1    as the circumstances under which it was made and the matter to which it relates. *See Pac. Gas &*

2    *Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 38-39. More specifically,

3    under California law, releases that purport to cover all claims that were or could have been raised

4    in an action "must be given comprehensive scope." *Villacres*, 189 Cal. App. 4th at 589 (citation

5    omitted). "The rule for releases is that absent special vitiating circumstances, a general release

6    bars claims based upon events occurring prior to the date of the release." *Id*. (quoting *Johnson,*

7    *Drake & Piper, Inc. v. United States*, 531 F.2d 1037, 1047 (1976)).

8    　　　　Even when applying California law to analyze a release, however, Ninth Circuit law

9    dictates that "[a] settlement agreement may preclude a party from bringing a related claim in the

10   future . . . only where the released claim is 'based on the identical factual predicate as that

11   underlying the claims in the settled class action.'" *Hesse v. Sprint Corp*., 598 F.3d 581, 590 (9th

12   Cir. 2010) (quoting *Williams v. Boeing Co.,*517 F.3d 1120, 1133 (9th Cir. 2008)); *see also Reyn's*

13   *Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 748 (9th Cir. 2006) (settlement release bars

14   subsequent claims if they arise from an "identical factual predicate" as claims asserted by the

15   settling party in the prior action).[15] "[S]uperficial similarit[ies]" between the actions are

16   insufficient to justify release. *Hesse*, 598 F.3d at 591. Rather, the Court's inquiry must focus on

17   whether the claims in each action depend on the same set of facts. *Id*. at 590-91. In analyzing a

18   release, courts also consider whether the named plaintiff in the prior action was an adequate

19   representative for the claims asserted by the plaintiff in the subsequent action. *Id*. at 588.[16]

20   ───────────────

21   　　　[15] Defendant cites *Reyn's* to argue that "even the Ninth Circuit has found that [] alleged
     wrongdoings do not need to be identical for one action to extinguish the other." (Reply at 14.)

22   *Reyn's*, however, does not support defendant's assertion. There, the Ninth Circuit held that
     although the *legal* theories in the relevant actions were different, the "price-fixing predicate (price-

23   fixing interchange rates) and the underlying injury [we]re identical." *Reyn's*, 442 F.3d at 749.
     Thus, contrary to defendant's assertion, the *Reyn's* court did consider whether the two actions

24   were predicated on the same alleged facts.

25   　　　[16] Defendant argues that *Hesse* does not apply for the additional reason that in that case,

26   the Ninth Circuit applied the "identical factual predicate" standard *only* because the claims sought
     to be released were not presented and might not have been presentable in the settled action."

27   (Motion at 15-16, n.7.) No where in *Hesse*, however, does the Ninth Circuit so limit its holding.
     Moreover, as in *Hesse*, plaintiff's claims in this action were not presented and might not have been

28   presentable in *Cashon*.

12

United States District Court
Northern District of California

1    Accordingly, the *Cashon* release must be interpreted to effectuate the intent of the parties

2   in the context of the overall action, while applying Ninth Circuit law regarding limitations on

3   enforceability of releases.[17]  Under the terms of the *Cashon* release, settling class members are

4   barred from pursuing "all disputes, claims, and/or causes of action pleaded or which could have

5   been pleaded in and arising from the facts, claims and/or allegations in the [*Cashon*] [c]omplaint

6   . . . during the Settlement Period," as well as "all claims of any and every nature based on off-the-

7   clock work, minimum wage, overtime, . . . waiting time penalties, California IWC Wage Order

8   claims and Unfair Competition Law claims that arose during the Settlement Period."  (UMF,

9   No. 15.)  Defendant avers that this release "expressly includes and releases all of the causes of

10  action at issue in this action," and because plaintiff failed to object to, intervene in, or opt out of

11  the *Cashon* settlement, she is therefore barred from asserting her claims in this case.  (Motion at

12  14.)  Plaintiff counters that the release does not bar her claims because the "subject matter of the

13  two cases is fundamentally different."  (Opp. at 21.)

14

15    [17]  Defendant avers that it is not aware of any California case law applying the "identical factual predicate" standard to analyzing the enforceability of a release, and plaintiff has not cited

16  to any such case law.  (Reply at 12.)  Notably, however, numerous courts in this circuit have applied the standard when analyzing releases governed by California law.  *See, e.g.*, *Raquedan v.*

17  *Volume Servs., Inc.*, No. 18-CV-01139-LHK, 2018 WL 3753505, at *6 (N.D. Cal. Aug. 8, 2018)

18  ("Even if the *Thompson* release attempts to reach claims not based on an identical factual predicate, Ninth Circuit law explicitly limits the release to claims based on the identical factual

19  predicate."); *Cancilla v. Ecolab Inc.*, No. C 12-03001 CRB, 2014 WL 2943237, at *7 (N.D. Cal. June 30, 2014) ("Release will depend on whether the present claim is based on the 'identical

20  factual predicate as that underlying the claim' in the previous settled class action."); *Feller v.*

21  *Transamerica Life Ins. Co.*, No. 216CV01378CASAJWX, 2016 WL 6602561, at *6 (C.D. Cal. Nov. 8, 2016) ("Although neither party relies upon a California state court decision addressing the

22  'identical factual predicate' test, federal courts have applied the test to determine the scope of settlement releases under California law.").  In several such cases, courts have expressly applied

23  both California and Ninth Circuit law.  *See, e.g., Schroeder v. Envoy Air, Inc.*, No. CV 16-04911-MWF-KS, 2016 WL 11520388, at *7 (C.D. Cal. Sept. 27, 2016) (citing *Villacres* for proposition

24  that release of "all claims and causes of action" must be given a comprehensive scope and applying the *Hesse* "identical factual predicate" standard); *Nangle v. Penske Logistics, LLC*, No.

25  11CV807-CAB (BLM), 2012 WL 12996852, at *2 (S.D. Cal. Oct. 30, 2012) ("Unlike *Villacres*,

26  the claims here arise out of a completely different policy, and are thus permitted to go forward since they are not based on the "identical factual predicate" as those that were settled[.]"); *Prieto*

27  *v. U.S. Bank Nat. Ass'n*, No. CIV S-09-901 KJM EFB, 2012 WL 4510933, at *6 (E.D. Cal. Sept.

28  30, 2012) (applying California contract law but noting that the identical factual predicate standard "is part of the court's interpretation of which claims fall within the terms of the settlement").

1      Defendant's argument fails to persuade. For the reasons discussed above, the evidence

2  shows that *Cashon* and this case arise from different factual predicates: namely, the *Cashon*

3  settlement concerns defendant's compensation of clinicians working in the home healthcare

4  setting, whereas this action defendant's compensation of clinicians working in the SNF setting.

5  Both parties have submitted evidence indicating that the nature of the work and the pay structures

6  differed in each of these settings. (*See* Stonehocker Decl. ¶¶ 2-4, 6; VanRude Decl. ¶ 3.)

7  Moreover, the *Cashon* complaint does not contain a single allegation regarding PCRs, which are a

8  focus of plaintiff's allegations here, while plaintiff's complaint does not address piece rate

9  employees, which were a focus of the *Cashon* complaint. In addition, the class notice stated in

10  several places that *only* those who provided home health care services would be affected by the

11  settlement, meaning plaintiff was a member of a class of SNF clinicians who did not receive

12  notice that they were releasing claims. (UMF Nos. 51, 53-55.) These two groups may not be

13  conflated for purposes of barring plaintiff's claims in this action.

14      Such differences in the factual predicates underlying each action are significant.

15  Accordingly, the Court finds that the *Cashon* release does not preclude plaintiff from pursuing her

16  claims in this action.

17  **IV.**    **CONCLUSION**

18      For the reasons stated above, the Court **DENIES** defendant's motion for summary judgment.

19  This Order terminates Docket Number 18.

20      **IT IS SO ORDERED.**

21

22  Dated: September 19, 2019

                        **YVONNE GONZALEZ ROGERS**

23                         **UNITED STATES DISTRICT COURT JUDGE**

24

25

26

27

28