1   Matthew D. Carlson (State Bar No. 273242)
    mdcarlson@mdcarlsonlaw.com
2   LAW OFFICE OF MATTHEW D. CARLSON
    50 Fountain Plaza, Suite 1400, #206
3   Buffalo, NY 14202
    Telephone: (716) 242-1234
4
5   Attorney for Plaintiff SARAH STONEHOCKER
6
7                    UNITED STATES DISTRICT COURT
8                   NORTHERN DISTRICT OF CALIFORNIA
9
10
11  SARAH STONEHOCKER, on behalf of herself     Case No.: 4:19-cv-02494-YGR
    and all others similarly situated
12                                              PLAINTIFF'S NOTICE OF MOTION
                                                AND MOTION FOR PRELIMINARY
13                    Plaintiff,                APPROVAL OF CLASS ACTION
                                                SETTLEMENT AND APPROVAL OF
14            v.                                PAGA SETTLEMENT
15  KINDRED HEALTHCARE OPERATING, LLC           Date:    November 10, 2020
16  and DOES 1-25,                              Time:    2:00 p.m.
                                                Judge:   Hon. Yvonne Gonzalez Rogers
17                    Defendants.               Dept.:   Courtroom 1, Fourth Floor
18
                                                Complaint Filed: February 14, 2019
19                                              (San Francisco Superior Court)
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION**

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 10, 2020, at 2:00 p.m., in Courtroom 1, Fourth Floor, of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, 94612, Plaintiff Sarah Stonehocker, individually and on behalf of all others similarly situated, will, and hereby does, move the Court pursuant to Federal Rule of Civil Procedure 23 and California Labor Code section 2699 for an order:

(1) Preliminarily approving the class portion of the Joint Stipulation and Class and Representative Action Settlement Agreement and Release ("Settlement Agreement")[1] between Defendant Kindred Healthcare Operating, LLC and the defendants to be added in the proposed Second Amended Complaint, Kindred Rehab Services, LLC, Kindred Rehab Services, Inc., RehabCare Group East, LLC, RehabCare Group East, Inc., American VitalCare, LLC, and RehabCare Group Of California, LLC, on the one hand, and Plaintiff on the other hand on the grounds that its terms are sufficiently fair, reasonable, and adequate for notice to be issued to the class;

(2) Certifying proposed settlement class for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(c);

(3) Approving the PAGA portion of the Settlement Agreement on the grounds that its terms are sufficiently fair, reasonable;

(4) Approving the distribution plan of the PAGA Payment, the release of the PAGA Claims set forth in this Agreement and the dismissal of the PAGA Claims asserted in the Action;

(5) Approving the form and content of the proposed Class Notice and notice plan;

---

[1] All capitalized terms appearing in this Motion that are not defined herein shall have the meanings assigned to them in the Joint Stipulation and Class and Representative Action Settlement Agreement and Release attached as Exhibit 1 to the attached as Exhibit 1 to the Declaration of Matthew D. Carlson in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Approval of PAGA Settlement filed concurrently with this Motion.

i

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PAGA SETTLEMENT
Case No.: 4:19-cv-02494-YGR

(6) Appointing the Law Office of Matthew D. Carlson to represent the Class as Class Counsel;

(7) Appointing Plaintiff to represent the Class as Class Representative;

(8) Appointing Simpluris, Inc. as Settlement Administrator;

(9) Scheduling a hearing regarding final approval of the proposed Class Settlement, Class Counsel's request for attorneys' fees and costs, and service award to the named Plaintiff;

(10)    Removing all current deadlines and hearings from the calendar; and

(11)    Granting such other and further relief as may be appropriate.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the Declaration of Matthew D. Carlson filed concurrently herewith; the Declaration of Sarah Stonehocker filed concurrently herewith, any supporting exhibits filed herewith; all other pleadings and papers filed in this action; and any argument or evidence that may be presented at or prior to the hearing in this matter.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PAGA SETTLEMENT
Case No.: 4:19-cv-02494-YGR

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND ...............................................................................2

    A. LITIGATION HISTORY .................................................................................2

    B. MEDIATION-RELATED DISCOVERY......................................................3

    C. MEDIATION .....................................................................................................5

    D. TERMS OF THE SETTLEMENT ..................................................................5

        1. The Settlement Class and PAGA Releasees............................................5

        2. Settlement Fund .........................................................................................5

        3. Release ........................................................................................................6

        4. Proposed Plan of Allocation ....................................................................6

        5. Class Notice Plan .......................................................................................7

        6. *Cy Pres* Designee .......................................................................................8

III. DISCUSSION ......................................................................................................8

IV. THE PAGA SETTLEMENT IS FAIR AND REASONABLE ............................9

V.  THE CLASS SETTLEMENT .............................................................................11

    A. LEGAL STANDARD.......................................................................................11

    B. CERTIFICATION OF THE SETTLEMENT CLASS ...................................12

        1. Requirements of Fed. R. Civ. P. 23(A) ...................................................13

            a. Numerosity .........................................................................................13

            b. Commonality ......................................................................................13

            c. Typicality ............................................................................................15

            d. Adequacy ............................................................................................16

        2. Requirements of Fed. R. Civ. P. 23(B)....................................................17

    C. THE CLASS SETTLEMENT IS FAIR AND REASONABLE......................18

        1. The Settlement Falls Within the Range of Possible Approval ............19

        2. The Settlement Is a Product of Serious, Informed, Non-Collusive
           Negotiations...........................................................................................22

        3. The Settlement Has No Obvious Deficiencies .....................................23

            a. Release ................................................................................................23

i

b. Class Notice Plan ..............................................................................24

c. *Cy Pres* Designee ............................................................................26

d. Attorney's Fees ...............................................................................26

e. Class Representative Service Award ..............................................27

4. The Settlement Does Not Unfairly Grant Preferential Treatment to Any
Class Members ...................................................................................28

VI. CONCLUSION....................................................................................................28

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
  731 F.3d 952 (9th Cir. 2013) ...................................................................13

*Acosta v. Trans Union, LLC*,
  243 F.R.D. 377 (C.D. Cal. 2007)..............................................................22

*Adoma v. Univ. Of Phoenix, Inc.*,
  913 F. Supp. 2d 964 (E.D. Cal. 2012).......................................................12

*Aguilar v. Wawona Frozen Foods*,
  2017 WL 117789 (E.D. Cal. Jan. 11, 2017) .............................................19

*Alberto v. GMRI, Inc.*,
  252 F.R.D. 652 (E.D. Cal. 2008) .......................................................12, 17

*Ang v. Bimbo Bakeries USA, Inc.*,
  2020 WL 2041934 (N.D. Cal. Apr. 28, 2020) ..........................................11

*Arias v. Superior Court*,
  46 Cal. 4th 969 (2009) ...............................................................................8

*Avila v. Cold Spring Granite Co.*,
  2018 WL 400315 (E.D. Cal. Jan. 12, 2018) .............................................28

*Balderas v. Massage Envy Franchising, LLC*,
  No. 12-CV-06327 NC, 2014 WL 3610945 (N.D. Cal. July 21, 2014).....21

*Barbosa v. Cargill Meat Sols. Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) ..............................................................26

*Barnes v. The Equinox Grp., Inc.*,
  No. C 10-3586 LB, 2013 WL 3988804 (N.D. Cal. Aug. 2, 2013) ...........27

*Baumann v. Chase inv. Servs. Corp.*,
  747 F.3d 1117 (9th Cir. 2014) ....................................................................8

*Bendon v. DTG Operations, Inc.*,
  2018 WL 6265059 (C.D. Cal. Feb. 27, 2018)................................12, 14, 17

*Blandino v. Mcm Constr., Inc.*,
  No. C 12-1729 Who, 2014 WL 11369763 (N.D. Cal. Mar. 6, 2014) .......12

*Board of Trustees of Laborers Vacation-Holiday Trust Fund for Northern
  California v. Lopez*,
  2018 WL 2117336 (N.D. Cal.) ...................................................................3

*Bond v. Ferguson Enterprises, Inc.*,
  2011 WL 2648879 (E.D. Cal. June 30, 2011) ..........................................23

*Brewer v. Gen. Nutrition Corp.*,
  No. 11-CV-3587 YGR, 2014 WL 5877695 (N.D. Cal. Nov. 12, 2014)....22

*Cashon v. Kindred Healthcare Operating, LLC*,
    Case No. 3:16-cv-04889-RS ................................................................................... passim

*Castillo v. ADT, LLC*,
    2017 WL 363108 (E.D. Cal. Jan. 25, 2017) ................................................................12

*Chu v. Wells Fargo Investments, LLC*,
    2011 WL 672645 (N.D. Cal. Feb. 16, 2011) ...............................................................10

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ...................................................................................11

*CLRB Hanson Industries, LLC v. Weiss & Associates, PC*,
    465 Fed. Appx. 617 (9th Cir. 2012)...........................................................................25

*Congdon v. Uber Techs., Inc.*,
    No. 16-CV-02499-YGR, 2019 WL 2327922 (N.D. Cal. May 31, 2019) ...............................28

*Contreras v. Worldwide Flight Servs., Inc.*,
    2020 WL 2083017 (C.D. Cal. Apr. 1, 2020) ...............................................................27

*Cooley v. Indian River Transp. Co.*,
    2019 WL 2077029 (E.D. Cal. May 10, 2019) .......................................................21, 27

*Cooley v. Indian River Transp.*,
    2019 WL 316634 (E.D. Cal. Jan. 24, 2019) ...............................................................21

*Corcoran v. CVS Health*,
    2019 WL 6250972 (N.D. Cal. Nov. 22, 2019) ...........................................................16

*Cotter v. Lyft, Inc.*,
    193 F. Supp. 3d 1030 (N.D. Cal. 2016) ....................................................................19

*Cotter v. Lyft, Inc.*,
    No. 13-CV-04065-VC, 2017 WL 1033527 (N.D. Cal. Mar. 16, 2017)........................20, 24

*Custom LED, LLC v. eBay, Inc.*,
    2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) ...........................................................23

*Dalton v. Lee Publications, Inc.*,
    270 F.R.D. 555 (S.D. Cal. 2010) ..............................................................................15

*Dawson v. Hitco Carbon Composites, Inc.*,
    2019 WL 6138467 (C.D. Cal. July 9, 2019)...............................................................19

*De Leon v. Ricoh USA, Inc.*,
    No. 18-CV-03725-JSC, 2020 WL 1531331 (N.D. Cal. Mar. 31, 2020)..........................25

*Deaver v. Compass Bank*,
    No. 13-CV-00222-JSC, 2015 WL 4999953 (N.D. Cal. Aug. 21, 2015)........................19, 23

*Deaver v. Compass Bank*,
    No. 13-CV-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) ........................12

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012)....................................................................................26

ii

*Franco v. Ruiz Food Products, Inc.*,
    2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ........................................................10

*Fronda v. Staffmark Holdings, Inc.*,
    No. 15-Cv-02315-MEJ, 2017 WL 5665671 (N.D. Cal. Nov. 27, 2017) ...............12, 15, 16, 17

*Garcia v. Gordon Trucking*,
    2012 WL 5364575 (E.D. Cal. 2012) ........................................................................10

*Greko v. Diesel U.S.A., Inc.*,
    2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ...........................................................23

*Guerrero v. Wells Fargo Bank, N.A.*,
    No. C 12-04026 WHA, 2014 WL 4351113 (N.D. Cal. Sept. 2, 2014).........................6

*Gutierrez v. Stericycle, Inc.*,
    2018 WL 10150821 (C.D. Cal. Oct. 24, 2018) ..........................................................19

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .......................................................................13, 16

*Haralson v. U.S. Aviation Servs. Corp.*,
    383 F. Supp. 3d 959 (N.D. Cal. 2019) .......................................................................9

*Harvey v. Morgan Stanley Smith Barney LLC*,
    No. 18-CV-02835-WHO, 2020 WL 1031801 (N.D. Cal. Mar. 3, 2020).................16, 19

*Hendricks v. StarKist Co*,
    No. 13-CV-00729-HSG, 2015 WL 4498083 (N.D. Cal. July 23, 2015) ....................28

*Howard v. America Online Inc.*,
    208 F.3d 741 (9th Cir. 2000) ...................................................................................23

*Hudson v. Libre Tech. Inc.*,
    2020 WL 2467060 (S.D. Cal. May 13, 2020) ...........................................................12

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ..........................................................11

*In re Hyundai & Kia Fuel Econ. Litig.* (*Hyundai II*),
    926 F.3d 539 (9th Cir. 2019) ...................................................................................17

*In re Oracle Sec. Litig.*,
    1994 WL 502054 (N.D. Cal. June 18, 1994) ............................................................28

*In re Tableware Antitrust Litig.*,
    484 F.Supp.2d 1078 (N.D. Cal. 2007) ...............................................................11, 19

*In Re Wells Fargo Loan Processor Overtime Pay Litig.*,
    No. MDL C-07-1841 EMC, 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011).................12

*Jabbari v. Farmer*,
    2020 WL 4046029 (9th Cir. July 20, 2020)..............................................................17

*Jeter-Polk v. Casual Male Store*, LLC,
    2016 WL 9450452 (C.D. Cal. Mar. 4, 2016) .....................................................12, 14, 18

TABLE OF AUTHORITIES

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ........................................................................15

*Laffitte v. Robert Half Int'l Inc.*,
    1 Cal. 5th 480 (2016) ...................................................................................26

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ......................................................................20

*Lopez v. Uber Technologies, Inc.*,
    Case No. 4:17-cv-06255-YGR (N.D. Cal.)....................................................25

*Lusby v. GameStop Inc.*,
    No. C12-03783 HRL, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015)..............21, 27

*Ma v. Covidien Holding, Inc.*,
    2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ..................................................21

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ........................................................................13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................11

*Noll v. eBay, Inc.*,
    309 F.R.D. 593 (N.D. Cal. 2015) ..................................................................18

*O'Connor v. Uber Techs., Inc.*,
    2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ................................................19

*Oppenlander v. Standard Oil Co.*,
    64 F.R.D. 597 (D.Colo.1974) ........................................................................20

*Ortiz v. Genco, Inc.*,
    No. 4:16-CV-04601-YGR, 2019 WL 1780577 (N.D. Cal. Apr. 23, 2019) ........9, 28

*Potter v. Big Tex Trailer Mfg., Inc.*,
    2019 WL 8512459 (C.D. Cal. Sept. 26, 2019) ..............................................19

*Ramirez v. Benito Valley Farms, LLC*,
    No. 16-CV-04708-LHK, 2017 WL 3670794 (N.D. Cal. Aug. 25, 2017)..............9

*Rangel v. PLS Check Cashers of California, Inc.*,
    899 F.3d 1106 (9th Cir. 2018) ......................................................................24

*Richardson v. Wells Fargo Bank, N.A.*,
    839 F.3d 442 (5th Cir. 2016) ........................................................................24

*Robinson v. Southern Counties Oil*,
    53 Cal. App. 5th 476 (2020) ..........................................................................8

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................20

*Roe v. Jose Torres L.D. Latin Club Bar, Inc.*,
    2020 WL 2494569 (N.D. Cal. May 14, 2020) ................................................12

iv

TABLE OF AUTHORITIES

*Roes, 1–2 v. SFBSC Management*,
    944 F.3d 1035 (9th Cir. 2019) ........................................................................12

*Satchell v. Fed. Express Corp.*,
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .................................................22

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir.1994) ...........................................................................25

*Singer v. Postmates, Inc.*,
    No. 4:15-CV-01284-JSW, 2017 WL 4842334 (N.D. Cal. Sept. 1, 2017) .................20

*Spann v. J.C. Penney Corp.*,
    2016 WL 297399 (C.D. Cal. Jan. 25, 2016) .....................................................17

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016) ....................................................................20

*Stovall-Gusman v. W.W. Granger, Inc.*,
    No. 13-CV-02540-HSG, 2015 WL 3776765 (N.D. Cal. June 17, 2015)..................21

*Studley v. All. Healthcare Servs., Inc.*,
    2013 Wl 12334708 (C.D. Cal. Sept. 26, 2013) .................................................12

*Syed v. M-I, L.L.C.*,
    2017 WL 714367 (E.D. Cal. Feb. 22, 2017) ....................................................10

*Tijero v. Aaron Bros., Inc.*,
    2013 WL 60464 (N.D. Cal. Jan. 2, 2013) ........................................................28

*Tijero v. Aaron Bros., Inc.*,
    301 F.R.D. 314 (N.D. Cal. 2013) .......................................................12, 16, 21, 27

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. 2010) ...............................................................17, 23

*Viceral v. Mistras Grp., Inc.*,
    No. 15-CV-02198-EMC, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ...........10, 21

*Villalpando v. Exel Direct, Inc.*,
    303 F.R.D. 588 (N.D. Cal. 2014) ....................................................................13

*Vinh Nguyen v. Radient Pharm. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ....................................................28

*Watson v. Tennant Co.*,
    No. 2:18-CV-02462 WBS DB, 2020 WL 1325014 (E.D. Cal. Mar. 20, 2020)........25

**Statutes**

Cal. Lab. Code § 2698 .............................................................................................6

Cal. Lab. Code § 2699(i) ........................................................................................10

Cal. Lab. Code § 2699(l)(2) .................................................................................8, 9

1

**<u>Rules</u>**

2  Fed. R. Civ. P. 23 .................................................................................................8

3  Fed. R. Civ. P. 23(a)(2) ..............................................................................13, 15, 17

4  Fed. R. Civ. P. 23(b) ...........................................................................................12

5  Fed. R. Civ. P. 23(b)(3) ......................................................................................17

6  Fed. R. Civ. P. 23(c)(2)(B) .................................................................................24

7  Fed. R. Civ. P. 23(c)(3) ......................................................................................25

8  Fed. R. Civ. P. 23(e) .....................................................................................11, 12

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF AUTHORITIES

1

2

## I.    INTRODUCTION

3

Plaintiff has reached a proposed settlement with Defendant Kindred Healthcare Operating,

4

LLC, and the defendants to be added in the proposed Second Amended Complaint, Kindred

5

Rehab Services, LLC, Kindred Rehab Services, Inc., RehabCare Group East, LLC, RehabCare

6

Group East, Inc., American VitalCare, LLC, and RehabCare Group Of California, LLC

7

(collectively, "Kindred"), which will resolve Class and PAGA wage and hour claims arising from

8

Kindred's alleged failure to properly compensate Skilled Clinicians (collectively, "SCs" or "Class

9

Members") employed by Kindred to work at Skilled Nursing Facilities ("SNFs") in California

10

during the Settlement Period from February 14, 2015, through September 1, 2020. *See*

11

Declaration of Matthew D. Carlson ("Carlson Decl.") at **Exhibit 1** (Joint Stipulation and Class

12

and Representative Action Settlement Agreement and Release ("Agreement" or "Settlement

13

Agreement")).

14

In exchange for a release of wage and hour claims arising from Class Members' and

15

PAGA Releasees' work at SNFs, Kindred has agreed to a settlement that provides for a non-

16

reversionary settlement fund in the amount of $1,995,000. As extensively detailed in the

17

Declaration of Matthew D. Carlson, filed concurrently herewith, this settlement provides

18

excellent value to Class Members and PAGA Releasees given the realistic value of their claims

19

and the risks of further litigation. While Plaintiff was optimistic that she would be successful in

20

this litigation, the settlement was reached in light of the value of claims as well as the following

21

considerations: (1) the risk that Plaintiff would not be able to obtain class certification on a

22

contested motion; (2) the risk that even if Plaintiff was able to certify a class, she would be unable

23

to prevail on some or all of her substantive class claims; (3) the risk that a portion of Class

24

Members would be excluded from the class and forced to individually arbitrate their claims (if

25

they were to become aware of their potential legal rights at all); (4) the risk that Kindred could

26

successfully appeal the Court's Order holding that the settlement in *Cashon v. Kindred*

27

*Healthcare Operating, LLC*, Case No. 3:16-cv-04889-RS ("*Cashon*"), does not preclude Plaintiff

28

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PAGA SETTLEMENT
Case No. 4:19-cv-02494-YGR

from asserting class claims; and (5) the risk that Kindred could successfully appeal some or all other adverse orders.

For the reasons discussed herein and in counsel's declaration, Plaintiff submits that the Class Settlement should be preliminarily approved, and that the PAGA Settlement should be approved, including the PAGA Payment, distribution plan of the PAGA Payment, the contingent release and dismissal of the PAGA Claims.[2]

## II.     FACTUAL BACKGROUND

### A.     LITIGATION HISTORY

On February 14, 2019, Plaintiff filed her original Complaint, Case No. CGC-19-573756, against Defendant in the Superior Court of California for the County of San Francisco. *See* Carlson Decl. at ¶ 3. On April 2, 2019, while the case was still pending in state court, Plaintiff filed her currently operative First Amended Complaint ("1AC"), around which time Plaintiff also served Defendant. *Id*. In her 1AC, Plaintiff asserted three claims on behalf of herself and all other SCs who worked in Kindred SNFs: (1) failure to compensate SCs for off the clock hours worked; (2) failure to pay SCs their wages when due (a derivative of Plaintiff's off the clock claim), and (3) unfair business practices (an Unfair Competition Law claim that "borrows" Plaintiff's overtime claim). *Id*. Plaintiff's theory of the case has been that, as a result of Kindred's unrealistic productivity standards, she and other individuals who worked as SCs at Kindred's SNFs worked off the clock hours for which they were not paid. *Id*.

Following assignment of the case to this Court, the parties agreed that the Court would need to resolve the issue of whether the class settlement in *Cashon* barred Plaintiff's individual claims and thereby lacking standing to assert to class claims in this case. *See* Carlson Decl. at ¶ 4; *see also* Dkt. No. 16. On September 19, 2019, after full briefing on the issue, the Court denied

---

[2]     As discussed *infra*, settlement of PAGA claims is not subject to the two-step process of the settlement of class claims under Rule 23, and thus the parties seek approval of the PAGA component of the settlement at this stage. *See* § III, *infra*. However, the release and dismissal of PAGA claims is contingent upon final approval of the entire the settlement. *See id*.

Kindred's Motion for Summary Judgment. Carlson Decl. at ¶ 4; *see also* Dkt. No. 30.  In October 2019, the parties began discussing the possibility and parameters of a potential mediation of the claims asserted in the 1AC as well as claims for meal and rest break violations, wage statement violations and related derivative claims which had not been asserted. Carlson Decl. at ¶ 4.[3] Following extensive discussions regarding the scope and type of information and documents needed for a thorough mediation, the parties agreed that experienced wage and hour mediator Tripper Ortman would be best suited to help the parties resolve this action. *Id.* Due to Mr. Ortman's schedule, the complicated nature of Kindred's retrieval of data and documents needed for mediation, and the lack of availability of other similarly experienced mediators, the parties' mediation was scheduled for May 20, 2020, and the case has been essentially stayed to date. Carlson Decl. at ¶ 4; *see also* Dkt. No. 42.

## B.    MEDIATION-RELATED DISCOVERY

In advance of mediation, Plaintiff produced numerous documents for mediation purposes, including, for example, emails and spreadsheets Plaintiff received in the course of her work as a first level "Program Director." Carlson Decl. at ¶ 5. These documents showed, *inter alia*, that Class Members and PAGA Releasees have been subject to productivity metrics regarding direct patient care, including the use of Patient Care Ratios ("PCRs"), and that at least some Kindred supervisors monitored overtime hours worked by Class Members and PAGA Releasees whom

---

[3]    In late November 2019, with the parties unable to make significant progress on these negotiations, Plaintiff's counsel drafted and sent to Kindred's counsel two motions ready to file in the event a concrete mediation plan could not be timely established – a Motion for Attorney's Fees and Costs arising from Kindred's unsuccessful Motion for Summary Judgment (pursuant to the attorneys' fee provision in the *Cashon* settlement agreement), as well as a Motion for Leave to Amend Plaintiff's Complaint. Carlson Decl. at n. 2; *see also Cashon* Dkt. No. 106-1 at ¶ 8.14 ("In any suit or court action to enforce the terms of this Agreement, the prevailing party shall be entitled to recover her or its attorneys' fees and costs."); *see also Board of Trustees of Laborers Vacation-Holiday Trust Fund for Northern California v. Lopez*, 2018 WL 2117336, *3 (N.D. Cal.) (party prevailing on motion to enforce settlement awarded to fees pursuant to provision in settlement agreement stating "[i]n any action to enforce this Agreement, the prevailing party shall be entitled to its attorneys' fees and costs incurred in enforcing this Agreement."). Counsel also included with his email to Kindred's counsel all supporting documents, including numerous exhibits. *See* Carlson Decl. at n. 2.

they supervised. *Id.*

Kindred produced numerous categories of documents for mediation purposes including, for example:

- Job descriptions (showing, *inter alia*, that Class Members and PAGA Releasees were or are non-exempt employees and provide(d) skilled direct patient care);

- Numerous wage and hour-related policies, practices, and procedures including those pertaining to off the clock work, meal periods, and rest periods (including multiple Kindred policies regarding, *inter alia*, timekeeping responsibilities, prohibition of off the clock work, and requirements relating to meal and rest periods);

- Sample arbitration provisions;

- Policies, practices, and procedures concerning patient documentation;

- Daily workflow graphs and attendant instructions on how to use a timekeeping application for, *inter alia*, scheduling, patient recordkeeping, and time worked

Carlson Decl. at ¶ 6. Kindred also produced information needed to value claims including the following data:

- Number of Class Members during multiple time periods;

- Number of Class Members during the relevant time period whose employment with Kindred has ended;

- Average base hourly rate of pay across Class Members during the relevant time period;

- Aggregate number of calendar days worked by Class Members during the relevant time period;

- Aggregate number of workweeks worked by Class Members during the relevant time period;

- Aggregate number of pay periods worked by Class Members and PAGA Releasees during multiple time periods; and

- The number of Class Members who have signed an arbitration agreement with Kindred and did not opt out.

*Id.* Using this data and extrapolations therefrom (*e.g.*, to account for the time from the data production to the release cutoff date of September 1, 2020), Plaintiff was able to assign

1
2

realistic dollar values, if any, to each claim in light of the provided data as well as the risks

associated with each claim. *See* Carlson Decl. at ¶¶ 8-56.

3
4

**C.    MEDIATION**

5
6
7
8
9

On May 20, 2020, the parties engaged in an approximately 10-hour long mediation with

Mr. Ortman via Zoom, with counsel and the parties present for the duration of the mediation.

Carlson Decl. at ¶ 7. After thorough negotiations concerning PAGA and Class Claims, the

mediation ended with an executed Memorandum of Understanding, which formed the basis for

the instant Agreement. *Id.* [4]

10

**D.    TERMS OF THE SETTLEMENT**

11

The settlement provides as follows:

12

**1.    The Settlement Class and PAGA Releasees**

13
14
15
16

The Settlement Class (also known as the "Class") is defined as: "all persons who are or

were employed by one or more Defendants as non-exempt Skilled Clinicians to work at a skilled

nursing facility in California at any time from February 14, 2015, through September 1, 2020."

Agreement at ¶ 2.6; *see also* Agreement at ¶¶ 2.15 and 2.52.

17
18
19
20
21

The Agreement also provides for a separate pool of employees who will receive a

payment pursuant to the parties' PAGA Settlement ("PAGA Releasees"), who are defined as "all

persons who are or were employed by one or more Defendants as non-exempt Skilled Clinicians

to work at a skilled nursing facility in California at any time from February 14, 2018 through

September 1, 2020." Agreement at ¶ 2.38; *see also* Agreement at ¶¶ 2.15 and 2.52.

22

**2.    Settlement Fund**

23
24

Under the terms of the settlement, Kindred will create a non-reversionary settlement fund

25
26
27
28

[4]    On or about June 15, 2020, Plaintiff sent to the Labor and Workforce Development
Agency ("LWDA") discussing the facts and theories supporting her claim for PAGA penalties in
the concurrently filed Second Amended Complaint. The LWDA declined to respond to Plaintiff's
correspondence. Carlson Decl. at ¶ 59. As required by statute, the LWDA will be notified of this
proposed settlement shortly after this Motion is submitted to the Court. *Id.*

of $1,995,000. Agreement at ¶ 2.24.

### 3.    Release

In exchange, Class Members will release claims pleaded or which could have been pled

arising, in whole or in part, from the facts, allegations and/or claims contained in Plaintiff's

Complaints[5] and/or PAGA Notice during the Settlement Period. Agreement at ¶ 4.3. Separately,

PAGA Releasees will release all PAGA claims premised in whole or in part on any of the claims

set forth in the facts, allegations and/or claims contained in Plaintiff's Complaints and/or PAGA

Notice during the PAGA Settlement Period. Agreement at ¶ 4.4.

### 4.    Proposed Plan of Allocation

From the gross settlement fund $1,995,000, $130,000 will be allocated to released claims

under the Labor Code Private Attorneys General Act of 2004 ("PAGA"), 75 percent of which

($97,500) will be paid to the State of California, and 25 percent of which ($32,500) will be paid

to the PAGA Releasees. Agreement at ¶ 3.1(c). A maximum of $22,500 will be set aside for

payment to the Settlement Administrator, Simpluris, Inc. Agreement at ¶ 3.1(d); *see also* Carlson

Decl. at ¶¶ 63-65 (discussing Settlement Administrator selection process).[6] Subject to Court

approval, one-third of the gross payment ($665,000) will be allocated to attorney's fees, up to

$15,000 will be allocated to Plaintiff's costs of litigation, and $5,000 will be allocated to the

named Plaintiff as a Service Award. Agreement at ¶¶ 3.1(a), (b). Thus, the Net Settlement Fund

to be distributed to Class Members is anticipated to be $1,157,500. *See id.*

The Net Settlement Fund will be distributed to those Class Members who do not timely

and properly opt out of the Class Settlement (*i.e.*, the "Plaintiff Class Members") based on the

number of pay periods worked by the Plaintiff Class Members for one or more Defendants during

---

[5]     The term "Complaints" include the original Complaint, First Amended Complaint and the proposed Second Amended Complaint filed concurrently herewith.

[6]     *Compare Guerrero v. Wells Fargo Bank, N.A.*, No. C 12-04026 WHA, 2014 WL 4351113, *1, *2 (N.D. Cal. Sept. 2, 2014) (in $625,000 settlement with approximately 1,900 class members, approving capped administrator fees at $28,604).

the Settlement Period as regularly recorded on Defendants' payroll system.  Agreement at ¶¶ 2.10, 2.50, 3.1(f). The portion of the PAGA Payment to be distributed to the PAGA Releasees is based on the number of pay periods worked by the PAGA Releasees for one or more Defendants during the PAGA Settlement Period as regularly recorded on Defendants' payroll system. Agreement at ¶¶ 2.34, 2.39, 2.42, 3.1(c). This formula has been designed to compensate Plaintiff Class Members and PAGA Releasees in proportion to the value of their claims. *Id.*[7]

The parties propose that any funds remaining and not distributed after the expiration of the settlement checks will be directed to the parties' proposed *cy pres* recipient, the First Responders Children's Foundation COVID-19 Emergency Response Fund.

### 5.    Class Notice Plan

The Agreement provides that the Class Notice will be sent to Class Members and PAGA Releasees via United States Postal Service. Agreement at ¶ 6.3. The Class Notice will include information concerning the lawsuit, the releases, the process for opting out of the Class Settlement, and the process for objecting to the Class Settlement, among other information. *See* Notice. As described in the Class Notice, Class Members will have 45 days to opt out or object to the Class Settlement, and that the Court has approved the PAGA Settlement. *Id.* Agreement at ¶ 2.30; *see also* Notice at ¶¶ 2, 10-11.

After approval of the PAGA Settlement and the final approval of the Class Settlement, Plaintiff Class Members and PAGA Releasees will be distributed their settlement checks and will have 90 days to cash or negotiate the checks. Agreement at ¶ 6.8(a)-(d). The Settlement Administrator will send one reminder postcard to any settlement check recipients who did not claim or not negotiate their settlement checks within 45 days after distribution by the Settlement Administrator reminding them to claim and/or negotiate their settlement checks. Agreement at ¶

---

[7]    Class Members and PAGA Releasees will be provided information in the Class Notice regarding the number of Class Pay Periods worked during the Settlement Period and the number of PAGA Pay Periods worked during the PAGA Settlement Period and opportunity to dispute that data if they believe they are not accurate. Agreement at ¶ 6.3(d).

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PAGA SETTLEMENT
Case No. 4:19-cv-02494-YGR

6.8(d).

The Settlement Administrator will maintain call center support and all Class Members will be provided with a phone number to contact that Settlement Administrator (or Class Counsel) with any questions. *See* Notice at ¶¶ 13, 17. The Notice will also instruct Class Members and PAGA Releasees on how to access case documents via Pacer. *Id.*

### 6.   *Cy Pres* **Designee**

Subject to Court approval, the parties have agreed that the First Responders Children's Foundation COVID-19 Emergency Response Fund will be the *cy pres* beneficiary of the settlement. Agreement at ¶ 6.8(d). No counsel of record for either party in this action has a personal or financial relationship with this proposed beneficiary. Carlson Decl. at ¶ 61; *see also* § V(C)(3)(c).

## III.   DISCUSSION

The parties have structured this settlement such that it is, essentially, two separate component settlements under one framework. The first component is the PAGA Settlement, which is subject to a one-step Court approval process pursuant to Cal. Lab. Code § 2699(l)(2). As is the case with settlement of PAGA claims, the claims are not subject to the requirements of Rule 23, *Arias v. Superior Court*, 46 Cal. 4th 969, 974 (2009), and "aggrieved employees" are not entitled to object to or opt out of the settlement, though the LWDA will receive notice of the settlement as required by law. *Baumann v. Chase inv. Servs. Corp.*, 747 F.3d 1117, 1122 (9th Cir. 2014) ("PAGA has no notice requirement for unnamed aggrieved employees, nor may such employees opt out of the PAGA action."); *Robinson v. Southern Counties Oil*, 53 Cal. App. 5th 476, 482 (2020) (while a class member may opt out of the class settlement of any individual claims he may have had, "there is no mechanism for opting out of the judgment entered on the PAGA claim."); see *also* Carlson Decl. at ¶ 59.

The second component is the Class Settlement, which is subject to the two-step approval and notice process and notice period contemplated by Rule 23.

While there are two components to this Settlement, none of the Settlement can go into

8

effect unless the entire Settlement is approved. Agreement at ¶ 5.2, 6.6, 7.8, 7.10, 8.2; *see also* Proposed Order at ¶ 18. In other words, in the unlikely event that the Court approves the PAGA Settlement, but does not grant final approval to the Class Settlement, the entire Settlement is null and void, no claims have been released, and the parties' legal relationship reverts to its pre-settlement status. *Id.* Multiple courts, including the *Cashon* court, have expressly adopted this two-component framework. *See Cashon* Dkt. No. 89.[8]

Plaintiff begins with discussing the fairness of the PAGA component of the Settlement, then turns to the Class component of the Settlement.

## IV.    THE PAGA SETTLEMENT IS FAIR AND REASONABLE

California Labor Code section 2699(l)(2) provides that the court shall review and approve any settlement of any civil action filed pursuant to the PAGA. Pursuant to section 2699(l)(2), PAGA settlements must be "fair and reasonable". *See, e.g.*, *Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 WL 3670794, *6 (N.D. Cal. Aug. 25, 2017).

Here, $130,000 of the Gross Settlement Fund is allocated as PAGA penalties (or, phrased differently, the PAGA Settlement amount is $130,000).  Agreement, ¶ 3.1(c).  This amount, which is approximately 1.9 % of the realistic value of the PAGA claim and 6.5% of the Gross Settlement Fund, is pegged to counsel's valuation of the PAGA claim and corresponding case law regarding PAGA allocations. See Carlson Decl. at ¶¶ 40-51 (valuing PAGA claim at approximately $6,927,000 and discussing allocation); *see also Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019) ("In this district, courts have raised concerns about settlements of less than 1% of the total value of a PAGA claim."); *compare also Ortiz*, No. 4:16-CV-04601-YGR, 2019 WL 1780577 *5, *14 (approving settlement with PAGA allocation

---

[8]    Numerous others have impliedly adopted it by separately assessing the fairness of a PAGA allocation as part of a global class settlement.

equal to approximately 4.8% of the settlement fund).[9] Like the class claims, Plaintiff's counsel carefully evaluated the claims, defenses, legal and factual issues, and potential value of PAGA Claims, and discussed these issues in depth with at mediation. *See* Carlson Decl. at ¶¶ 8-56 (discussing value and risks associated with the PAGA claims in this case); ¶ 7 (discussing mediation).

The PAGA Settlement is also procedurally sound. Pursuant to Labor Code Section 2699(i), 75% of the PAGA Payment are to be paid to the LWDA and the remaining 25% will be distributed to all PAGA Releasees based on the number of PAGA Pay Periods Worked by each PAGA Releasee during the PAGA Settlement Period, as a fraction of the total PAGA Pay Periods Worked by all PAGA Releasees during the PAGA Settlement Period.  Agreement at ¶¶ 2.34, 2.39, 3.1(c).  This payment is the PAGA payment to the PAGA Releasees and shall be treated entirely as penalties for which an IRS Form 1099 misc., if required.  Agreement at ¶ 3.1(c).

PAGA Payment checks will be issued after the Court grants approval of the PAGA Settlement and final approval of the Class Settlement along with separate checks for the Class Settlement.  The Settlement Administrator will send one reminder postcard to any settlement check recipients who did not claim or not negotiate their settlement checks (including PAGA Payment Checks) within forty-five (45) days after distribution by the Settlement Administrator

---

[9]    *See also Viceral v. Mistras Grp., Inc.*, No. 15-CV-02198-EMC, 2016 WL 5907869, *8 (N.D. Cal. Oct. 11, 2016)  (approving $20,000 total PAGA settlement in a case with $13,000,000 in potential PAGA exposure) (.15%); *Syed v. M-I, L.L.C.*, 2017 WL 714367, *13 (E.D. Cal. Feb. 22, 2017) (approving $100,000 total PAGA settlement in a case with $53,600,000 in potential PAGA exposure) (.19%).

There is also a substantial history of court approval of nominal PAGA settlements. *See, e.g., Chu v. Wells Fargo Investments, LLC*, 2011 WL 672645, *1 (N.D. Cal. Feb. 16, 2011) (approving $10,000 PAGA allocation out of $6.9 million common-fund settlement); *Franco v. Ruiz Food Products, Inc.*, 2012 WL 5941801, *13 (E.D. Cal. Nov. 27, 2012) (approving $10,000 PAGA allocation out of $2.5 million common-fund settlement); *Garcia v. Gordon Trucking*, 2012 WL 5364575, *3 (E.D. Cal. 2012) (approving $10,000 PAGA allocation out of $3.7 million settlement), among many other similar approvals.

Notably, counsel in *Cashon* did not attempt to value PAGA claims, though presumably exposure would have been significant given the strength of that case. *See Cashon* Dkt. No. 84 at ¶ 44 (valuing only claims for unpaid travel time and unpaid rest breaks); *see also* n. 17.

1    reminding them to claim and/or negotiate their settlement checks. Agreement at ¶ 6.8(d).[10] Funds

2    for PAGA Payment Checks that are not cashed by PAGA Releasees after 90 days shall be paid to

3    the Court-approved *cy pres* beneficiary of the Settlement. Agreement, ¶ 6.8(d).

4        In sum, the proposed PAGA Settlement is substantively and procedurally fair and

5    reasonable and should be approved.

6                        **V.    THE CLASS SETTLEMENT**

7    **A.    LEGAL STANDARD**

8        Any compromise of a class action must receive Court approval. Fed. R. Civ. P. 23(e).

9    "Approval under 23(e) involves a two-step process in which the Court first determines whether a

10   proposed class action settlement deserves preliminary approval and then, after notice is given to

11   Class Members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v.*

12   *DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

13       A court should grant preliminary approval if the parties' class settlement "appears to be

14   the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does

15   not improperly grant preferential treatment to class representatives or segments of the class, and

16   falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078,

17   1079 (N.D. Cal. 2007); *see also Ang v. Bimbo Bakeries USA, Inc.*, 2020 WL 2041934, at *4 (N.D.

18   Cal. Apr. 28, 2020) (same).

19       "In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong

20   judicial policy that favors settlements, particularly where complex class action litigation is

21   concerned.'" *In re Heritage Bond Litig.*, 2005 WL 1594403, *2 (C.D. Cal. June 10, 2005) (citing

22   *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). Nonetheless, when

23   parties negotiate a settlement agreement before the class has been certified, settlement approval

---

[10]    As noted, PAGA Releasees need not receive notice of the PAGA Settlement, nor do they
have the legal right to object to or opt out of the PAGA Settlement. However, PAGA Releasees in
this case will receive notice of the PAGA Settlement as part of the Class Notice to avoid
confusion.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PAGA SETTLEMENT
Case No. 4:19-cv-02494-YGR

requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e). *Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, 2020 WL 2494569, *6 (N.D. Cal. May 14, 2020) (citing *Roes, 1–2 v. SFBSC Management*, 944 F.3d 1035, 1043 (9th Cir. 2019)).

Numerous courts have certified "off the clock" wage and hour cases for settlement purposes. *See, e.g.*, *Bendon v. DTG Operations, Inc.*, 2018 WL 6265059 (C.D. Cal. Feb. 27, 2018); *Hudson v. Libre Tech. Inc.*, 2020 WL 2467060 (S.D. Cal. May 13, 2020); *Fronda v. Staffmark Holdings, Inc.*, No. 15-Cv-02315-MEJ, 2017 WL 5665671 (N.D. Cal. Nov. 27, 2017); *Castillo v. ADT, LLC*, 2017 WL 363108 (E.D. Cal. Jan. 25, 2017); *Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015); *Jeter-Polk v. Casual Male Store*, LLC, 2016 WL 9450452 (C.D. Cal. Mar. 4, 2016); *Blandino v. Mcm Constr., Inc.*, No. C 12-1729 Who, 2014 WL 11369763 (N.D. Cal. Mar. 6, 2014); *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 321 (N.D. Cal. 2013); *Studley v. All. Healthcare Servs., Inc.*, 2013 Wl 12334708 (C.D. Cal. Sept. 26, 2013); *In Re Wells Fargo Loan Processor Overtime Pay Litig.*, No. MDL C-07-1841 EMC, 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011); *Adoma v. Univ. Of Phoenix, Inc.*, 913 F. Supp. 2d 964 (E.D. Cal. 2012).

**B.    CERTIFICATION OF THE SETTLEMENT CLASS**

Where a litigation class has not been previously certified, courts must confirm the propriety of a settlement class by determining if it meets the four prerequisites identified in Federal Rule of Civil Procedure 23(a) and additionally fits within one of the three subdivisions of Federal Rule of Civil Procedure 23(b). *See e.g., Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 659 (E.D. Cal. 2008).

Here, for purposes of settlement only, the parties have agreed to a Class defined as "all persons who are or were employed by one or more Defendants as non-exempt Skilled Clinicians to work at a skilled nursing facility in California at any time from February 14, 2015 through September 1, 2020."

//

//

### 1.     Requirements of Fed. R. Civ. P. 23(A)

Rule 23(a) requires that a plaintiff demonstrate: (1) numerosity of plaintiffs; (2) common questions of law or fact; (3) that the named plaintiff's claims and defenses are typical; and (4) that the named plaintiff can adequately protect the interests of the class.

#### a.     Numerosity

A plaintiff satisfies the numerosity requirement if "the class is so large that joinder of all members is impracticable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "Although the requirement is not tied to any fixed numerical threshold, courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *Villalpando v. Exel Direct, Inc.*, 303 F.R.D. 588, 605-06 (N.D. Cal. 2014).

Here, the Settlement Class includes approximately 2,268 people. *See* Carlson Decl. at ¶ 57. The numerosity requirement is easily satisfied.

#### b.     Commonality

The commonality requirement is satisfied if "there are common questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). A plaintiff "must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 53 (2014) (emphasis and internal quotation marks omitted); *see also Mazza*, 666 F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant question of law or fact"). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019. Proof of commonality under Rule 23(a) is "less rigorous" than the related preponderance standard under Rule 23(b)(3). *Mazza*, 666 F.3d at 589.

1

2    Multiple courts have found the commonality inquiry is met in cases in which plaintiffs

3    assert wage and hour claims arising from alleged off the clock work. *See, e.g., Fronda*, 2017 WL

4    5665671, at *7 (commonality met in off the clock work case where alleged practices resulted in

5    uncompensated time worked, legally deficient meal and rest periods, and attendant wage and hour

6    violations); *Bendon*, 2018 WL 6265059, at *5 (commonality met in off the clock work case where

7    common questions include, among others: whether the class members were provided with timely

8    meal periods, whether defendant's wage statements were compliant with California law, and

9    whether class members were entitled to compensation for off the clock work); *Jeter-Polk*, 2016

10   WL 9450452, at *4 (commonality met in off the clock work case where common factual

11   questions included, *inter alia*, whether defendant paid class members for all hours worked, kept

12   accurate payroll records, and allowed class members to take meal and rest periods; common legal

13   questions included whether defendant violated the Labor Code, whether Defendant engaged in

     unfair business practices, and whether defendant was liable under PAGA).

14        Plaintiff contends the same result should follow here, where common factual questions

15   include whether (1) Class Members worked off the clock hours; (2) whether Kindred knew or

16   should have known Class Members worked off the clock hours; (3) whether Kindred provided

17   Class Members with duty-free and timely meal periods; (4) whether Kindred authorized and

18   permitted Class Members to take duty-free and timely rest periods; (5) whether Kindred provided

19   Class Members with proper itemized wage statements; (6) whether Kindred maintained accurate

20   payroll records for Class Members; and (7) whether Kindred failed to pay Class Members all

21   wages when due. Common legal questions include (1) whether Kindred's conduct resulted in

22   violations of the California Labor Code; and (2) whether Kindred engaged in unfair business

23   practices.

24        These common factual and legal questions apply to all Class Members equally, all of

25   whom assert the same theory of liability: that Kindred's alleged productivity standards regarding

26   their time spent on direct patient care resulted in off the clock work, including during meal and/or

27   rest periods. *See* Carlson Decl. at ¶¶ 5-6 (describing documents showing, *inter alia*, that (1) Class

28

1    Members were or are non-exempt; (2) Class Members provide(d) direct patient care; and (3) Class

2    Members were subject to productivity metrics regarding direct patient care, such as PCR and

3    documentation requirements); *see also* Stonehocker Decl. at ¶¶ 3-6 (discussing Class Member job

4    duties). Accordingly, the Settlement Class meet the commonality requirement of Rule 23(a)(2).

5                    c.        **Typicality**

6

7        "Typicality is a permissive standard, and only requires that the named plaintiffs' claims

8    are 'reasonably coextensive' with those of the class." *Dalton v. Lee Publications, Inc.*, 270 F.R.D.

9    555, 560 (S.D. Cal. 2010). Thus, "[i]n examining this condition, courts consider whether the

10   injury allegedly suffered by the named plaintiffs and the rest of the class resulted from the same

11   alleged common practice." *Id.* (internal quotation omitted); *see also Fronda*, 2017 WL 5665671,

12   at *7 ("Measures of typicality include whether other members have the same or similar injury,

13   whether the action is based on conduct which is not unique to the named plaintiffs, and whether

14   other class members have been injured by the same course of conduct.") (citing *Just Film, Inc. v.*

15   *Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017)).

16       Here, Plaintiff asserts claims on behalf of the class arising from Kindred's alleged

17   productivity standards, including failure to compensate class members for off the clock work and

18   missed meal and rest periods, as well as claims for attendant penalties for deficient wage

19   statements and recordkeeping and waiting time penalties.[11] Moreover, Plaintiff does not assert

────────────────

20   [11]    Plaintiff notes that while there are a number of job descriptions that fall within the class
     definition, many of the different titles are simply a result of slight changes to titles, and the class
21   effectively encompasses only non-exempt Occupational Therapists, Physical Therapists, Speech
     Therapists, Speech Language Pathologists, Respiratory Therapists in California. *See* Agreement
22   at Exh. A; *see also* Carlson Decl. at n. 3; *see also* Stonehocker Decl. at ¶¶ 3-6.

23       Plaintiff also notes that various "Program Directors," "Rehab Clinical Leader," and
     "Rehab Coordinator,"– job titles included in the class definition – are non-exempt OTs, PTs, STs,
24   SLPs, or RTs who perform those job functions but who also take on first-level management
     duties. Stonehocker Decl. at ¶¶ 3-4 (describing her experience as a temporary Program Director).
25   Indeed, the job description for these individuals shows that, despite their "managerial-sounding"
     names, they, like all other OTs, PTs, STs, SLPs, and RTs, have been classified as non-exempt
26   employees and have provided direct patient care in the scope of their duties. Carlson Decl. at n. 3.

27   (*cont'd*)

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

any individual claims or assert any unique theories of liability. *See Fronda*, 2017 WL 5665671, at

*7.[12] Therefore, Plaintiff satisfies the typicality requirement.

### d.    Adequacy

"Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and

their counsel have any conflicts of interest with other Class Members, and (2) will the named

plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150

F.3d at 1020.

Here, Plaintiff does not have any conflicts of interest with other Class Members – indeed,

she seeks to represent them for the same wage and hour claims arising from Kindred's alleged

productivity standards and purported unlawful practices that she alleges individually.

Additionally, as demonstrated in this litigation and as discussed in counsel's Declaration, both

_____

Additionally, the job descriptions show that the "Physical Therapist Assistant" and
"Occupational Therapist Assistant" job positions are also non-exempt and, like all other job
categories, their duties include providing skilled direct patient care (for Assistants, under the
direction of Physical and Occupational Therapists). *Id.*; *see also* Stonehocker Decl. at ¶¶ 3-6.
Further, like all other job categories included in the Settlement's definition of "Skilled Clinician",
Assistants have been similarly subject to Kindred's productivity standards. *See id.*

Further, like other OTs, PTs, STs, SLPs, and RTs, Class Members with the above job
titles have been subject to productivity standards by their superiors and have therefore allegedly
been subject to Kindred's purported practice of pressuring Class Members to work off the clock
and through meal and rest periods, resulting in damages and attendant penalties. *Id.*; *see also*
Stonehocker Decl. at ¶¶ 3-6; *see also Tijero*, 301 F.R.D. at 321 (commonality and typicality met
where varying job duties were "not pertinent to the claims at issue since all non-exempt
employees were subject to the same unlawful wage and hour policies and practices of
[d]efendant.").

[12]    While Plaintiff's work at Kindred SNFs did not occur within the one-year statute of
limitations for certain claims (*e.g.*, claims for deficient wage statements, recordkeeping, or claims
under PAGA), that does not prevent her from asserting them in an amended complaint for
settlement. *See Harvey v. Morgan Stanley Smith Barney LLC*, No. 18-CV-02835-WHO, 2020 WL
1031801, *17 (N.D. Cal. Mar. 3, 2020) (a defendant may waive a statute of limitations affirmative
defense for purposes of entering into a class settlement). Nor does it prevent her from releasing
such claims on behalf of the class. *Id.*; *see also Corcoran v. CVS Health*, 2019 WL 6250972, *5
(N.D. Cal. Nov. 22, 2019) (concluding that the typicality requirement was satisfied where other
class members were "very likely to be subjected to the same statute of limitations defense as both
[class representatives]," and the class representatives therefore were not "uniquely subjected to
the statute of limitations.")

Plaintiff and counsel has and will continue to prosecute this action vigorously on behalf of the class. For these reasons, Plaintiff satisfies the adequacy requirement.

## 2.    Requirements of Fed. R. Civ. P. 23(B)

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to Class Members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Notably, the Ninth Circuit has recently reiterated that "[a]lso relevant is whether a district court certifies a class for settlement or for trial" because "[s]ettlement may "obviate[] the need to litigate individualized issues that would make a trial unmanageable, making common questions more important in the relative analysis." *Jabbari v. Farmer*, 2020 WL 4046029, *2 (9th Cir. July 20, 2020) (internal quotations omitted) (*citing In re Hyundai & Kia Fuel Econ. Litig.* (*Hyundai II*), 926 F.3d 539, 558 (9th Cir. 2019) (*en banc*)).[13]

In the context of a class settlement of off the clock case, courts have routinely held that the "predominance" requirement is met. *See, e.g.*, *Fronda*, 2017 WL 5665671, at *8 (N.D. Cal. Nov. 27, 2017) (predominance satisfied theory of recovery was that defendant's policies and procedures resulted in uncompensated work time, deficient meal and rest periods, and resulting penalties); *Bendon*, 2018 WL 6265059, at *4–8 (C.D. Cal. Feb. 27, 2018) (predominance satisfied where answers to common questions, including whether class members were entitled for compensation for off the clock and missed meal periods, would "drive the resolution of the litigation").

For reasons similar to those discussed above in connection with the Rule 23(a)(2) commonality inquiry, Plaintiff contends questions of law or fact common to Class Members

---

[13]    *See also Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) (part of the Rule 23(b)(3) noting that this factor is "essentially irrelevant" in "the context of settlement"); *see also Alberto*, 252 F.R.D. at 664; *Spann v. J.C. Penney Corp.*, 2016 WL 297399, *3 (C.D. Cal. Jan. 25, 2016) ("[C]ourts need not consider the Rule 23(b)(3) considerations regarding manageability of the class action, as settlement obviates the need for a manageable trial.").

predominate over individualized inquiries. Moreover, Plaintiff contends these common questions of law and fact could be answered with common proof, primarily including Kindred's practices with respect to productivity, off the clock work performed, payroll records, wage statements, meal periods, rest periods, and paying employees who have been discharged or who have quit. *See Jeter-Polk*, 2016 WL 9450452, at *5 (predominance met where "resolution of [] alleged class claims could be resolved through the use of common forms of proof"); *see also* Carlson Decl. at ¶¶ 5-6, n. 3; Stonehocker Decl. at ¶¶ 3-6 (both discussing fact that Class Members provide(d) direct patient care and that Class Members have been subject to productivity metrics regarding direct patient care).

In addition, Plaintiff contends class-wide treatment is superior to numerous individual actions because Class Members have relatively small value claims, and most likely have no idea that they may have been owed compensation and/or penalties. *See, e.g.*, *Noll v. eBay, Inc.*, 309 F.R.D. 593, 604 (N.D. Cal. 2015) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Moreover, such a significant number of individual actions would result in duplicative discovery in litigation and the potential for conflicting results. *See Jeter-Polk*, 2016 WL 9450452, at *5 (superiority met because "[i]f class members were to litigate individually, there would be duplicative discovery and litigation, whereas the class action mechanism would allow for the efficient resolution of many identical claims at the same time. This saves judicial resources and eliminates the possibility of conflicting decisions.").

Accordingly, all requirements for a settlement class under Rule 23 have been met, and the Court should certify the proposed Settlement Class.

## C.    THE CLASS SETTLEMENT IS FAIR AND REASONABLE

Preliminary approval of a settlement and notice to the class is appropriate if it: (1) falls within the range of possible approval; (2) is the product of serious, informed, non-collusive negotiations; (3) has no obvious deficiencies; and (4) does not improperly grant preferential treatment to class representatives or segments of the class. *See, e.g., Deaver v. Compass Bank*,

No. 13-CV-00222-JSC, 2015 WL 4999953, *4 (N.D. Cal. Aug. 21, 2015).

### 1.    The Settlement Falls Within the Range of Possible Approval

In determining whether a settlement falls "within the range of possible approval," courts weigh the "realistic value" of claims against the amount offered in settlement.  *See Gutierrez v. Stericycle, Inc.*, 2018 WL 10150821, *14 (C.D. Cal. Oct. 24, 2018) (evaluating value of settlement against "the total realistic value of the claims"); *Aguilar v. Wawona Frozen Foods*, 2017 WL 117789, *4 (E.D. Cal. Jan. 11, 2017) (evaluating value of settlement against "realistic value" of claims, including many released claims valued by counsel at zero dollars); *Dawson v. Hitco Carbon Composites, Inc.*, 2019 WL 6138467, *8 (C.D. Cal. July 9, 2019) (evaluating value of settlement against "realistic value" of claims); *Potter v. Big Tex Trailer Mfg., Inc.*, 2019 WL 8512459, *7 (C.D. Cal. Sept. 26, 2019) (same); *also O'Connor v. Uber Techs., Inc.*, 2019 WL 1437101, *10–11 (N.D. Cal. Mar. 29, 2019) (evaluating value of settlement against the "realistic maximum recovery amount", including numerous released claims valued by counsel at zero dollars); *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016) (evaluating value of settlement against realistic value of claims, including numerous released claims valued by counsel at zero dollars); *see also In re Tableware Antitrust Litig.*, 484 F. Supp.2d 1078, 1080 (N.D. Cal. 2007) ("To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer.") (emphasis added).

Other courts, including the *Cashon* court, have similarly focused on claims that counsel view as the "driver" of a case. *See Cashon* Dkt. No. 84 at ¶ 44 (providing analysis and valuation of just two class claims, which were clearly the focal point of the litigation, and otherwise stating "[t]his is a difficult case in which to estimate the total amount of damages, restitution and penalties the Class would recover in the event that the Class were to prevail on all claims and issues in the litigation because of the multiple variables involved…"); *Harvey*, 2020 WL 1031801, at *6 (evaluating value of settlement against claim that was "the driver of th[e] case", where other released claims were valued by counsel at zero dollars).

Regardless of the precise terms used, what matters is that courts in the Ninth Circuit

19

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PAGA SETTLEMENT
Case No. 4:19-cv-02494-YGR

1  analyze the fairness of a settlement based not on some arbitrary, unrealistic, or theoretical value

2  ascribed to claims on which a plaintiff does not expect to recover, but on a "realistic" or

3  "expected" recovery. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965-66 (9th Cir. 2009)

4  (rejecting the notion that "the court should have specifically weighed the merits of the class's case

5  against the settlement amount and quantified the expected value of fully litigating the matter" in

6  evaluating proposed settlement and finding that consideration of "estimated recovery," or "likely

7  recovery" at trial is sufficient); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.

8  1998) ("The proposed settlement is not to be judged against a hypothetical or speculative measure

9  of what *might* have been achieved by the negotiators.") (emphasis in original); *Spann v. J.C.*

10  *Penney Corp.*, 314 F.R.D. 312, 323-24 (C.D. Cal. 2016) ("[T]he Ninth Circuit does not follow the

11  approach of other circuits that requires district courts to specifically weigh the merits of the

12  class's case against the settlement amount and quantify the expected value of fully litigating the

13  matter") (internal quotation omitted).

14      Accordingly, Plaintiff refers the Court to the Carlson Decl. at ¶¶ 8-56, which discusses, in

15  detail, the nature and value of the claims at issue in this litigation. In sum, the settlement

16  represents approximately 17% of the realistic potential recovery. *See* Carlson Decl. at ¶ 56;

17  *compare Cotter v. Lyft, Inc.*, No. 13-CV-04065-VC, 2017 WL 1033527, *2 (N.D. Cal. Mar. 16,

18  2017), *aff'd sub nom. Cotter v. Page*, No. 17-15648, 2017 WL 4535961 (9th Cir. Sept. 15, 2017)

19  (approving wage and hour settlement amounting to approximately 17% of realistic recovery,

20  where all claims except for claims for mileage reimbursement, withheld gratuities, and overtime

21  were realistically valued at $0); *Singer v. Postmates, Inc.*, No. 4:15-CV-01284-JSW, 2017 WL

22  4842334 (N.D. Cal. Sept. 1, 2017) (final approval granted 04/25/18) (approving wage and hour

23  settlement amounting to approximately 15% of realistic recovery, where all claims except for

24  claims for reimbursement were realistically valued at $0); *see also Oppenlander v. Standard Oil*

25  *Co.,* 64 F.R.D. 597, 624 (D.Colo.1974) ("It has been held proper to take the bird in hand instead

26  of a prospective flock in the bush."); *see also Deaver*, No. 13-CV-00222-JSC, 2015 WL 8526982,

27  at *7 (approving wage and hour settlement amounting to 10.7% of potential exposure); *Stovall-*

28

20

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PAGA SETTLEMENT
Case No. 4:19-cv-02494-YGR

*Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-HSG, 2015 WL 3776765, *4 (N.D. Cal. June 17, 2015) (approving wage and hour settlement amounting to 10% of potential exposure); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, *5 (C.D. Cal. Jan. 31, 2014) (approving wage and hour settlement amounting to 9.1% of potential exposure); *Viceral v. Mistras Grp., Inc.*, No. 15-CV-02198-EMC, 2016 WL 5907869, *7 (N.D. Cal. Oct. 11, 2016) (approving wage and hour settlement amounting to 8.1% of potential exposure); *Balderas v. Massage Envy Franchising, LLC*, No. 12-CV-06327 NC, 2014 WL 3610945, *5 (N.D. Cal. July 21, 2014) (approving wage and hour settlement amounting to approximately 8% of potential exposure).[14]

Perhaps more to the point, the recovery in this case, wherein Class Members will be entitled to approximately $880 each from the Gross Settlement Fund, compares favorably to per-class member recoveries in other off the clock cases. *See Tijero*, 301 F.R.D. at 319, 322 (approving $800,000 gross settlement in failure to pay for all hours worked case with more than 6,000 class members (less than $133.33 per class member)); *Cooley v. Indian River Transp. Co.*, 2019 WL 2077029, *8 (E.D. Cal. May 10, 2019) (approving $1,400,000 gross settlement in failure to pay for all hours worked case with 2,303 class members ($607.90 per class member));[15] *Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 WL 1501095, *5, *6 (N.D. Cal. Mar. 31, 2015) (approving $750,000 gross settlement in failure to pay for all hours worked case with more than 13,000 class members ($57.69 per class member)).[16]

While Plaintiff was optimistic that she would succeed in this action, in reaching this

---

[14]    Plaintiff notes that the *Cashon* settlement is not a helpful comparison, as that case involved an alleged facially illegal policy under Cal. Lab. Code § 226.2 applicable to all Kindred home healthcare therapists. *See Cashon* Dkt. No. 87 (Settlement Complaint) at ¶¶ 7-9 (describing the enactment of § 226.2, Kindred's alleged failure to comply with the new statute, and its alleged failure to take advantage of the statute's safe harbor). In other words, unlike this case, *Cashon* was very strong on both class certification and liability.

[15]    For numerosity in *Cooley, see Cooley v. Indian River Transp.*, 2019 WL 316634, *3 (E.D. Cal. Jan. 24, 2019).

[16]    While these cases generally involved risks inherent in all class actions, as well as risks specific to cases involving unpaid hours worked, it appears none of these cases had a risk comparable to the possible impact of the *Cashon* settlement in this case.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PAGA SETTLEMENT
Case No. 4:19-cv-02494-YGR

settlement, she reasonably considered certain risks, discussed in claim-by-claim detail. *See* Carlson Decl. at ¶¶ 8-56. These risks include the possibilities that (1) the Court could determine, on an opposed motion for class certification, that some or all of Plaintiffs' substantive claims were not susceptible to classwide adjudication (*see e.g.*, *Brewer v. Gen. Nutrition Corp.*, No. 11-CV-3587 YGR, 2014 WL 5877695, *13 (N.D. Cal. Nov. 12, 2014 "evidence of [productivity] incentives alone does not establish a common issue for class certification."));  (2) Plaintiff might fail to prove some or all substantive claims at trial; and (3) Kindred might successfully invoke their arbitration provisions to prevent a portion of Class Members from participating as class members in a class action; (4) Kindred might successfully appeal the Court's ruling that the *Cashon* settlement did not bar the class claims here; and (5) Kindred might successfully appeal any other adverse orders. *Id.*

## 2.    The Settlement Is a Product of Serious, Informed, Non-Collusive Negotiations

For the parties "to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). Thus, adequate discovery and the use of an experienced mediator support a finding that settlement negotiations were both informed and non-collusive. *See Villegas*, 2012 WL 5878390, at *6; *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive");

Here, the parties exchanged numerous documents as well as information relating to class certification and liability, with a focus on the most critical issues in the case. Carlson Decl. at ¶¶ 5-7.  Kindred also provided detailed damages discovery concerning claims at issue. Carlson Decl. at ¶ 6. The parties also litigated the critical issue of whether the *Cashon* settlement barred Plaintiff's claims asserted on behalf of the class. *See* Dkt. No. 30.[17] The parties mediated the case

---

[17]    Had Kindred prevailed on that issue, or if it were to prevail on appeal, Class Members would receive nothing, and Plaintiff may have been liable for Kindred's attorneys' fees and costs related to its Motion, including fees relating to a potential appeal. *See* Carlson Decl. at ¶ 54.

1
2
3
4
5
6
7
8
9
10

with a highly experienced and renowned wage and hour mediator, Tripper Ortman, and the settlement the parties have reached was the result of thorough negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case. Carlson Decl. at ¶¶ 66-73 (discussing experience), *see* also Carlson Decl. at ¶¶ 8-56 (valuing claims and risks). Thus, the parties had ample information, expert guidance from an experienced mediator, and intimate familiarity with the strengths and weaknesses of their respective positions before settling. *See Vasquez*, 266 F.R.D. at 489 (approving settlement where "[b]y the time the settlement was reached, the litigation had proceeded to a point in which both plaintiffs and defendants had a clear view of the strengths and weaknesses of their cases.") (internal citations omitted).

11
12

### 3.    The Settlement Has No Obvious Deficiencies

13
14
15
16

A court should also consider possible deficiencies in a settlement including, for example, issues surrounding the release of claims, the notice plan, the plan of allocation, the *cy pres* designee, and, preliminarily, a request for attorneys' fees. *See Custom LED, LLC v. eBay, Inc.*, 2013 WL 6114379, *7-8 (N.D. Cal. Nov. 20, 2013); *Deaver*, 2015 WL 4999953, at *7.

17

### a.    Release

18
19
20
21
22
23
24
25
26
27
28

Releases in class settlements should be approved when claims released by unnamed class members are limited to those related to the conduct alleged in the complaint. *See Cotter*, 193 F. Supp. at 1038 ("What matters is whether the released claims arise from the same facts as those alleged in the lawsuit, and whether the settlement as a whole is reasonable in light of the strength and value of all the claims being released."). *See also Howard v. America Online Inc.*, 208 F.3d 741, 747 (9th Cir. 2000) (enforcing release that "bar[red] claims that 'ar[o]se out of or [we]re related to the matters referred to' in the complaint"); *Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602, *6 (N.D. Cal. Apr. 26, 2013) (approving release of claims "arising from, or related to, the same facts alleged in or that reasonably could have been included" in the complaint); *Bond v. Ferguson Enterprises, Inc.*, 2011 WL 2648879, *3 (E.D. Cal. June 30, 2011) (approving release of "All claims, demands, rights, liabilities, and causes of action, whether brought directly,

representatively, or in any capacity, that were or could have been asserted in the Lawsuit based upon the facts alleged therein").

The scope of the release here follows the above parameters, as it is limited to claims pleaded or which could have been pled arising, in whole or in part, from the facts, allegations and/or claims contained in Plaintiff's Complaints and/or PAGA Notice. Unrelated claims – *e.g.*, claims for discrimination – are not released by this settlement on a class-wide basis. All claims that arise against Kindred after September 1, 2020 – even claims with the identical factual predicate as those asserted in this case – are not released.[18]

Plaintiff notes that although FLSA claims are not asserted in this case, they are released under the Settlement without affirmative consent, and such a release is proper. *Cotter v. Lyft, Inc.*, No. 13-CV-04065-VC, 2017 WL 1033527, *2 (N.D. Cal. Mar. 16, 2017), *aff'd sub nom. Cotter v. Page*, No. 17-15648, 2017 WL 4535961 (9th Cir. Sept. 15, 2017) (approving settlement in case where FLSA claim was not asserted in complaint but released in settlement, stating "there is no greater reason to prevent Rule 23 class settlements from releasing unasserted FLSA claims than there is to prevent those settlements from releasing other unasserted claims that arise from the facts of the case."); *see also Richardson v. Wells Fargo Bank, N.A.*, 839 F.3d 442 (5th Cir. 2016) (same); *Rangel v. PLS Check Cashers of California, Inc.*, 899 F.3d 1106, 1112 (9th Cir. 2018) (citing *Cotter*).[19]

### b. Class Notice Plan

Under Fed. R. Civ. P. 23(c)(2)(B), a class notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified;

---

[18]   Indeed, a point of negotiation during mediation was whether the release period would end only when the settlement becomes formally "Final" (*i.e.*, when no further review of the final approval order is available), as is often the case in class settlements, or at some sooner date certain. Carlson Decl. at ¶ 58. The negotiation of September 1, 2020 as the release cutoff date, rather than an open-ended release cutoff date, provides a significant potential benefit to class members currently or recently employed by Kindred. *Id.*

[19]   As discussed in counsel's valuation of claims, the value of the FLSA claim was subsumed by Plaintiff's state law overtime claims. Carlson Decl. at ¶ 14.

(iii) the class claims, issues, or defenses; (iv) that a Class Member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Class members are entitled to the best notice practicable, reasonably calculated under the circumstances to apprise him or her of the pendency of the class action. *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir.1994).

Here, the Class Notice contains all information required by Rule 23, is easy to read, and allows Class Members to make an informed decision as to whether they wish to opt out or object to the Class Settlement during the 45-day notice period. *See*, *e.g.*, *Cashon* Dkt. No. 89 (approving 45-day notice period); *Lopez v. Uber Technologies, Inc.*, Case No. 4:17-cv-06255-YGR (N.D. Cal.), Dkt. No. 49 at p. 8 (approving 45-day notice period); *De Leon v. Ricoh USA, Inc.*, No. 18-CV-03725-JSC, 2020 WL 1531331, *7 (N.D. Cal. Mar. 31, 2020) (in wage and hour action, approving 45-day notice period); *compare Watson v. Tennant Co.*, No. 2:18-CV-02462 WBS DB, 2020 WL 1325014, *1 (E.D. Cal. Mar. 20, 2020) (in wage and hour action, approving 30-day notice period); *Ferrari v. Autobahn, Inc.*, No. 4:17-CV-00018-YGR, 2019 WL 295260, *10 (N.D. Cal. Jan. 23, 2019) (giving final approval to settlement with 30-day notice period).

The Agreement requires the Settlement Administrator to use Kindred's data for mailing addresses, and to search for updated mailing addresses in the event a notice packet is undeliverable. Agreement at ¶ 6.3(b). Class Members have not cashed their checks will receive one reminder notice to do so. Agreement at ¶ 6.8(d). Though not required under Ninth Circuit law, Class Members will also be given their estimated payment under the settlement, the basis for the payment (*i.e.*, pay periods worked) and the opportunity to dispute Kindred's records. Agreement at ¶ 6.3(d). *See CLRB Hanson Industries, LLC v. Weiss & Associates, PC*, 465 Fed. Appx. 617, 619 (9th Cir. 2012) ("Our cases require that a settlement notice describe the aggregate amount of the settlement fund and the plan for allocation but do not require that such notice allow class members to estimate their individual recovery.").

//

25

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PAGA SETTLEMENT
Case No. 4:19-cv-02494-YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

c.    *Cy Pres* **Designee**

In the Ninth Circuit, there must be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." A *cy pres* award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent Class Members, and (3) must not benefit a group "too remote from the plaintiff class." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012).

Here, the parties have agreed, subject to Court approval, that any residual funds from the settlement after the expiration of the settlement checks should be distributed to the First Responders Children's Foundation COVID-19 Emergency Response Fund. Agreement at ¶ 6.8(d). This is a 501(c)(3) organization that provides financial and other support to COVID-19 first responders, including skilled clinicians at skilled nursing facilities who provide care to COVID-19 patients, and their families. *See* https://1strcf.org/. One of the stated objectives of the fund is to provide financial assistance for "brave medical personnel and staff of the…health facilities that are treating COVID-19 patients" and specifically to help such personnel who are suffering from financial hardships and who have had to work harder than ever (and, perhaps, without complete compensation) as a result of the pandemic. *Id.*[20]

d.    **Attorney's Fees**

As will be briefed prior to final approval, Plaintiff's Counsel intends to apply for attorney's fees not to exceed one-third of the gross settlement fund. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 511 (2016) (in wage and hour action, affirming fee award of one-third gross settlement and discussing benefits of using percentage of the fund approach to awarding fees).[21]

---

[20]    Counsel have no personal or financial relationships with the First Responders Children's Foundation COVID-19 Emergency Response Fund. Carlson Decl. at ¶ 61. Additionally, while this fund has been established for medical personnel nationwide, and this is a California-based case, many Class Members here have relocated; indeed, they now live across 35 states.

[21]    *See also Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) (in wage and hour action, noting "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage" but "in most common fund cases, the award exceeds that benchmark percentage."); *see also Contreras v. Worldwide Flight Servs., Inc.*, 2020 WL 2083017, *7 (C.D. (*cont'd*)

By way of comparison, other courts reviewing settlements in cases alleging failure to pay for all hours worked have awarded fees amounting to one-third of the gross settlement where the benefit to class members was far less substantial than the average $880 per Class Member benefit conferred by this settlement. *See Cooley*, 2019 WL 2077029, at * 8 ($607.90 per class member; approving request for one-third of settlement for attorneys' fees and commenting that "in wage and hour class actions that result in a common fund of less than $10 million, California district courts usually award attorneys' fees in the range of 30–40%") (internal quotations omitted); *Tijero*, 301 F.R.D. at 319 (N.D. Cal. 2013), ($133.33 per class member); *Tijero* Dkt. No. 109 (05/28/14) (approving counsel's request for one-third of settlement amount for attorneys' fees); *Lusby*, 2015 WL 1501095, *3-6 (N.D. Cal. Mar. 31, 2015) ($57.69 per class member; approving request for one-third of settlement for attorneys' fees).[22]

As will be discussed in greater detail at the final approval stage, Plaintiff submits that counsel's fee request is justified by the results obtained for class members under very difficult factual and legal circumstances, the heightened risk unique to this case, and other factors to be assessed in connection with final approval.

### e.    Class Representative Service Award

As will also be briefed prior to final approval, the agreed-upon Service Award in the amount of $5,000 is in line with awards in other wage and hour settlements in California district

---

Cal. Apr. 1, 2020) (in wage and hour action, finding risks inherent in class action litigation supported upward departure from benchmark); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (collecting wage and hour cases in which counsel received fee awards in the range of 33.3% to 30% of the common fund); *Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 WL 1501095, *9 (N.D. Cal. Mar. 31, 2015) (in wage and hour action, finding a one-third fee award appropriate because to the results achieved, the risk of litigation, the skill required and the quality of work, and the contingent nature of the fee and the financial burden carried by the plaintiffs); *Barnes v. The Equinox Grp., Inc.*, No. C 10-3586 LB, 2013 WL 3988804, *4 (N.D. Cal. Aug. 2, 2013) (in wage and hour action, awarding one-third of gross settlement in fees and costs because counsel assumed substantial risk and litigated on a contingency fee-basis).

[22]    As previously noted, these cases generally involved risks inherent in all class actions, as well as risks specific to cases involving unpaid hours worked, but none had a risk comparable to the effect of the *Cashon* settlement in this case.

courts. *E.g.*, *Avila v. Cold Spring Granite Co.*, 2018 WL 400315, *6 (E.D. Cal. Jan. 12, 2018) (in wage and hour case, noting "[a] service award of $5,000.00…is presumptively reasonable in this Circuit"); *Congdon v. Uber Techs., Inc.*, No. 16-CV-02499-YGR, 2019 WL 2327922, *9 (N.D. Cal. May 31, 2019), *appeal dismissed*, No. 19-16309, 2019 WL 4854343 (9th Cir. July 12, 2019) ("The Ninth Circuit has repeatedly held that $ 5,000 is a reasonable amount for an incentive award."); *Ortiz v. Genco, Inc.*, No. 4:16-CV-04601-YGR, 2019 WL 1780577, *2 (N.D. Cal. Apr. 23, 2019) (in wage and hour and background check case, approving $5,000 service award to named plaintiff).

### 4.    The Settlement Does Not Unfairly Grant Preferential Treatment to Any Class Members

Under this factor, a court may assess whether the allocation of the settlement fund may "unfairly benefit certain Class Members." *Tijero v. Aaron Bros., Inc.*, 2013 WL 60464, *10 (N.D. Cal. Jan. 2, 2013). "[T]o the extent feasible, the [a] plan [of allocation] should provide Class Members who suffered greater harm and who have stronger claims a larger share of the distributable settlement amount." *Hendricks v. StarKist Co*, No. 13-CV-00729-HSG, 2015 WL 4498083, *7 (N.D. Cal. July 23, 2015) (citing cases). However, "courts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Id.* (citing *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, *5 (C.D. Cal. May 6, 2014)).

Here, the settlement provides for a distribution to Class Members based on the number of Class Pay Periods worked and therefore properly provides Class Members who suffered greater alleged harm a larger share of the settlement fund. *See In re Oracle Sec. Litig.*, 1994 WL 502054, *1 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."). Accordingly, the Settlement does not unfairly grant preferential treatment to any Class Member.

### VI. CONCLUSION

For the foregoing reasons, Plaintiff submit that the parties' Class Settlement is fair and

28

reasonable and should be preliminarily approved and that the parties' PAGA Settlement is fair and reasonable and should be approved.


Dated: October 2, 2020                     LAW OFFICE OF MATTHEW D. CARLSON


                                           By: _/s/ Matthew D. Carlson_ _____
                                               Matthew D. Carlson
                                               Attorney for Plaintiff