Matthew D. Carlson (State Bar No. 273242)
mdcarlson@mdcarlsonlaw.com
LAW OFFICE OF MATTHEW D. CARLSON
50 Fountain Plaza, Suite 1400, #206
Buffalo, NY 14202
Telephone: (716) 242-1234

Attorney for Plaintiff SARAH STONEHOCKER

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH STONEHOCKER, on behalf of herself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>KINDRED HEALTHCARE OPERATING, LLC, KINDRED REHAB SERVICES, LLC, KINDRED REHAB SERVICES, INC., REHABCARE GROUP EAST, LLC, REHABCARE GROUP EAST, INC., AMERICAN VITALCARE, LLC, REHABCARE GROUP OF CALIFORNIA, LLC and DOES 1-25,<br><br>Defendants. | **Case No.: 19-cv-02494-YGR**<br><br>**SECONDED AMENDED COMPLAINT**<br><br>Complaint Filed: February 14, 2019<br>(San Francisco Superior Court)<br><br>**CLASS ACTION** |

Plaintiff Sarah Stonehocker, by and through her attorney, brings this wage and hour class and Labor Code Private Attorneys General Act representative action against Defendants Kindred HealthCare Operating, LLC, Kindred Rehab Services, LLC, Kindred Rehab Services, Inc., RehabCare Group East, LLC, RehabCare Group East, Inc., American VitalCare, LLC and RehabCare Group of California, LLC (collectively, "Kindred"), and hereby alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff and similarly situated aggrieved employees are current or former Skilled Clinicians ("Class Members") who have been employed by Kindred to work at Skilled Nursing Facilities ("SNFs") throughout the State of California. Class Members include physical therapists, occupational therapists, respiratory therapists, speech therapists, speech language pathologists, rehabilitation coordinators, rehab clinical leaders and other similar positions that provide skilled direct patient care at SNFs. Plaintiff's claims arise from Kindred's strict and impracticable minimum Patient Care Ratio ("minimum PCR") productivity standard and other productivity standards, and its attendant systemic and failure to pay Class Members for all hours worked (including but not necessarily limited to overtime hours), provide Class Members with timely and duty-free meal periods, authorize and permit Class Members to take timely and duty-free rest periods, provide Class Members with accurate itemized wage statements, maintain accurate payroll records for Class Members, and pay Class Members all wages when due. These Labor Code violations are also violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. ("UCL"), and also subject Kindred to penalties pursuant to the Labor Code Private Attorneys General Act of 2004 ("PAGA").

## JURISDICTION

2.     The Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1331, 1332(d), 1367, and 1453.  CAFA vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of Plaintiff

is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

## VENUE

3.      This Court is the proper venue for this matter because Plaintiff worked for Kindred in the Northern District of California.

## THE PARTIES

4.      Plaintiff Sarah Stonehocker is a citizen of California, domiciled in San Francisco, California. Plaintiff worked for Kindred as an occupational therapist in several of Kindred's San Francisco SNFs (Tunnell Center and, from time to time, Lawton and Victorian Centers) from October 31, 2006, until October 17, 2016, at which time she transitioned to a home health care position with Kindred. Plaintiff's employment relationship with Kindred ended on December 28, 2019. For a one-month period around July 2015, Plaintiff worked as a temporary first-level Rehabilitation Manager ("RM"), filling in for Plaintiff's RM and direct superior, during which time Plaintiff worked as both a SC and as a RM/first level manager of her SC colleagues.

5.      Kindred Healthcare Operating, LLC is a Delaware limited liability company with its principal place of business in Louisville, Kentucky, doing business throughout California as described herein.

6.      Plaintiff does not know the names or capacities of Does 1-25, but discovery may show that subsidiaries, affiliates, parent companies, purchasers, and/or joint venturers of or with Kindred may properly be Defendants in this matter. Discovery may also show that certain individuals currently unknown to Plaintiff may be liable for some or all of the claims asserted herein pursuant to Cal. Lab. Code § 588.1.

## V. FACTUAL ALLEGATIONS

7.      Plaintiff and Class Members were or are employed by Kindred at SNFs throughout California.

8.      Class Members who are or employed by Kindred to work at SNFs were typically required

to see a specific number of patients based on the length of their shifts.  For example, Class Members were typically required to see seven to twelve patients in an eight-hour shift. With respect to each "regular" patient visit (*i.e.*, visits that were not for initial evaluations, reassessments, or discharge), Class Members provided skilled direct patient care, and also performed a minimum of approximately 10-20 minutes per patient of unskilled ancillary work, including, for example, paperwork, chart review, and care team communication. Class Members also spent 15-30 minutes each shift checking in at the beginning of their shifts, obtaining their schedules, and checking out at the end of their shifts. On such eight-hour shifts, Class Members were also typically allotted with two ten-minute rest breaks each day. Thus, during an eight-hour shift, Class Members spent, at minimum, 105 minutes of their 420-minute shifts – 25% of their time – on unskilled work: basic ancillary work, breaks, and shift prep and wrap-up tasks. Class Members frequently spent substantially more than 25% of their shift on unskilled work when they saw patients for initial evaluations, reassessments, and discharge. Class Members also attended weekly or biweekly staff meetings that each took between 30 minutes and one hour, which further reduced the amount of skilled work provided on the days on which staff meetings were held.

9.      Despite this allocation of work time, Kindred maintained the above-mentioned minimum PCR, or patient care ratio, pursuant to which Class Members were required to spend at least 87% of their shift time on skilled direct patient care.

10.     Kindred and its management rigorously enforced the minimum PCR. For example, Kindred Area Directors (second-level managers) sent to subordinate RMs (first-level managers) throughout California spreadsheets containing, *inter alia*, individual Class Members' PCRs, with instructions to "get our therapists up to expectations", "ameliorate the low time spent in direct pt care", and to "concentrate on the outliers highlighted" in the spreadsheets. Indeed, some Class Members with PCRs below 87% had their names and statistics highlighted in yellow on such spreadsheets. Thus, Class Members who fell below the minimum PCR were reprimanded by

RMs and were forced to meet with RMs to discuss why they did not meet the minimum PCR and to come up with a plan to meet or exceed the minimum PCR, and RMs frequently posted Class Members' PCRs on viewable bulletin boards. Kindred also implemented a generally applicable policy pursuant to which it paid bonuses to Class Members who maintained PCRs at 87% or higher (87%-89% = 1.5% bonus; 90%-92% = 2.0% bonus; 93%-100% = 2.5% bonus). Thus, Class Members were incentivized and pressured to meet or exceed their minimum PCRs or face adverse employment action, lesser pay, or both. RMs were, in turn, pressured by Area Directors (and likely also incentivized) to have Class Members under their management meet or exceed the minimum PCR, and Area Directors reprimanded RMs when Class Members failed to meet or exceed the minimum PCR.

11.    To meet the various productivity standards set by Kindred, including minimum PCR standards, Class Members were able to do so by performing unpaid and undocumented work, including overtime work, and/or by working through some or all meal and/or rest periods.

12.    Class Members did not typically report all hours worked to managers, because Kindred sought to limit or eliminate overtime hours worked and managers reprimanded Class Members for working overtime hours. Indeed, management circulated an "overtime watch list" for California "areas". On the infrequent occasions on which Class Members did report overtime hours worked, Kindred management would oftentimes simply change Class Members' time records so that the records showed fewer overtime hours worked than were actually worked, or no overtime hours worked at all.

13.    As a result of Kindred's failure to pay Class Members for all hours worked (including but not limited to overtime hours worked), failure to provide duty-free meal periods, and failure to authorize and permit duty-free rest periods, Class Members, or an identifiable subset thereof, were not paid wages owed at the time of quitting or discharge.

14.    As a result of Kindred's failure to pay Class Members for all hours worked (including but not limited to overtime hours worked), failure to provide duty-free meal periods, and failure to

authorize and permit duty-free rest periods, Class Members were not provided with accurate wage statements.

15.    As a result of Kindred's failure to pay Class Members for all hours worked (including but not limited to overtime hours worked), failure to provide duty-free meal periods, and failure to authorize and permit duty-free rest periods, Kindred failed to maintain accurate payroll records for Class Members.

## VI. CLASS ACTION ALLEGATIONS

16.    Plaintiff's claims are brought on behalf of herself and all others similarly situated. This putative class is defined as:

> "All persons who are or were employed by one or more Defendants as non-exempt Skilled Clinicians to work at a skilled nursing facility in California at any time from February 14, 2015 through September 1, 2020."

**A.    ASCERTAINABILITY**

17.    It is administratively feasible to determine the Class Members through Kindred's records because Kindred maintains Class Members' personal information, including contact information and pay records.

**B.    NUMEROSITY**

18.    There are at least 2,000 Class Members.

**C.    COMMONALITY**

19.    Class Members share common issues of fact, including but not limited to:

a.    Whether Kindred has had a practice of failing to pay Class Members for all hours worked (including but not limited to minimum wage, straight time and/or overtime compensation) in violation of Cal. Lab. Code §§ 510, 1194, 1197, 1198; Wage Order Nos. 4 and 5; and corresponding California Code of Regulations;

b.    Whether Kindred has had a practice of failing to provide Class Members with accurate wage statements showing the information required by Cal. Lab. Code § 226;

c.    Whether Kindred has had a practice of failing to keep accurate payroll records for

Class Members in violation of Cal. Lab. Code §§ 226, 1174 and/or 1174.5;

d.     Whether Kindred has had a practice of failing to provide Class Members with 30-minute duty-free meal periods when Class Members work more than five hours per day and failing to pay meal break penalties in violation of Cal. Lab. §§ 226.7, 512; Wage Order Nos. 4 and 5; and corresponding California Code of Regulations;

e.     Whether Kindred has had a practice of failing to authorize and permit Class Members to take 10-minute duty-free rest periods for every four hours of Class Members' work time or major fraction thereof and failing to pay rest break penalties in violation of Cal. Lab. § 226.7; Wage Order Nos. 4 and 5; and corresponding California Code of Regulations; and

f.     Whether Kindred has had a practice of failing to timely pay Class Members during employment and Class Members who have been discharged or who have quit their wages when due in violation of Cal. Lab. Code §§ 201-204.

20.     Class Members share common issues of law, including:

a.     Whether Kindred's practice of failing to pay Class Members for all hours worked (including but not limited to overtime hours) is in violation of Cal. Lab. Code §§ 510, 1194, 1197, 1198, Wage Order Nos. 4 and/or 5 and/or corresponding California Code of Regulations;

b.     Whether Kindred's practice of failing to keep accurate time and payroll records for Class Members is in violation of Cal. Lab. Code §§ 226, 1174, 1174.5, Wage Order Nos. 4 and/or 5 and/or corresponding California Code of Regulations;

c.     Whether Kindred's practice of failing to provide Class Members with accurate wage statements is in violation of Cal. Lab. Code § 226;

d.     Whether Kindred's practice of failing to provide Class Members with 30-minute duty-free meal periods when Class Members work more than five hours per day and failing to pay meal break penalties is in violation of Cal. Lab. Code §§ 226.7, 512, Wage Order Nos. 4 and/or 5 and/or corresponding California Code of Regulations;

e.     Whether Kindred's practice of failing to authorize and permit Class Members to

take 10-minute duty-free rest periods for every four hours of Class Members' work time or major

fraction thereof and failing to pay rest break penalties is in violation of Cal. Lab. Code § 226.7,

Wage Order Nos. 4 and/or 5 and/or corresponding California Code of Regulations; and

f.      Whether Kindred's practice of failing to timely pay all wages due to Class

Members during their employment and Class Members who have been discharged or who have

quit their wages when due is in violation of Cal. Lab. Code §§ 201, 202, 203 and 204.

21.     The common issues of law can be answered with proof common to Class Members,

including:

a.      Kindred's practices with respect to productivity;

b.      Kindred's practices with respect to off the clock work performed;

c.      Kindred's practices with respect to payroll records

d.      Kindred's practices with respect to wage statements;

e.      Kindred's practices with respect to meal periods;

f.      Kindred's practices with respect to rest periods;

g.      Kindred's practices with respect to timely paying employees all wages due during

their employment;

h.      Kindred's practices with respect to timely paying employees all wages due who

have been discharged or who have quit; and

i.      All other facts common to the putative class alleged above.

**D.    TYPICALITY**

22.     Plaintiff's claims are typical, if not identical, to the claims that could be asserted by Class

Members, as Plaintiff's claims arise from Kindred's systemic failure to (1) properly compensate

Plaintiff and Class Members for all hours worked (including but not necessarily limited to

overtime hours); (2) provide them with accurate wage statements; (3) provide Class Members

with timely and duty-free meal periods; (4) authorize and permit Class Members to take timely

and duty-free rest periods; (5) maintain accurate payroll records for Class Members; and (6) pay

Class Members all wages when due.

**E.    ADEQUACY**

23.    Plaintiff is a Class Member and will fairly and adequately represent and protect the interests of Class Members. Plaintiff has no conflicts of interests with Class Members.

24.    Counsel for Plaintiff is competent and experienced in litigating wage and hour class action.

**F.    PREDOMINANCE**

25.    Common questions of law and fact predominate over individual issues in this action because the issue of Kindred's liability for the wage and hour violations identified herein can be established as to all Class Members with proof of Kindred's substantially uniform pay practices.

**G.    SUPERIORITY**

26.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the relatively small monetary value of the claims asserted by Class Members, most if not all Class Members would likely find the cost of individually litigating their claims against Kindred to be prohibitive. Further, thousands of individual proceedings in lieu of a class action would be an unnecessary burden on the court system as well as the parties. Additionally, many Class Members may be unaware that they have legal recourse against Kindred for the conduct alleged herein.

## VII.  FIRST CLAIM

### Failure to Pay Minimum Wage, Straight Time and/or Overtime Wages

### Cal. Lab. Code §§ 510, 1194, 1197, 1198, Wage Order 4 and/or 5 and Corresponding California Code of Regulations

27.    Plaintiff, on behalf of herself and Class Members, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

28.    Pursuant to California law, Kindred was and/or is the employer of Plaintiff and Class Members.

29.     Cal. Lab. Code § 1198, Wage Order 4 and 5 and corresponding California Code of Regulations require employers to pay their employees at their overtime rate of pay for hours worked in excess of eight per day and/or 40 per week.

30.     Cal. Lab. Code § 1194 states that any employee receiving less than the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

31.     Cal. Lab. Code § 1197, Wage Order 4 and 5 and corresponding California Code of Regulations require that minimum wage for employees fixed by the Industrial Welfare Commission or by any applicable state or local law, is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful.

32.     Plaintiff and Class Members worked for Kindred but were not properly compensated for such work.  Kindred therefore have violated the provisions of the applicable Wage Orders, California Code of Regulations and Labor Code sections that require proper compensation for all hours worked.

33.     As a result of Kindred's unlawful conduct, Plaintiff and Class Members or are owed back payment for their hours worked, plus attorneys' fees and costs of suit.

## VIII.  SECOND CLAIM

### Failure to Furnish Accurate Wage Statements

### Cal. Lab. Code § 226

34.     Plaintiff, on behalf of herself and Class Members, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

35.     Pursuant to California law, Kindred was and/or is the employer of Plaintiff and Class Members.

36.     Cal. Lab. Code § 226 states that every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check,

draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment.

37.    Kindred unlawfully failed to provide Plaintiff and Class Members with accurate itemized wage statements in writing showing total hours worked and/or all applicable hourly rates. Further, for example, as a result of Kindred failing to pay all wages and meal and/or rest break premiums owed to Plaintiff and Class Members, the listed gross wages are also inaccurate.

38.    Plaintiff and Class Members suffered injury as a result of Kindred's conduct because, for example, they could not readily ascertain their true hours worked and their true wages owed from the wage statements provided.

39.    The injuries suffered by Plaintiff and Class Members as a result of this misconduct were as a result of Kindred's knowing and intentional failure to comply with Cal. Lab. Code § 226(a).

40.    Accordingly, Plaintiff and each Class Member are entitled to recover fifty dollars for the initial pay period in which a violation of § 226 occurred, and one hundred dollars for each violation of § 226 in a subsequent pay period, not to exceed a penalty of four thousand dollars per Class Member plus attorney fees, costs, and injunctive relief.

### IX. THIRD CLAIM

**Failure to Provide Compliant Meal Periods**

**Cal. Lab. Code §§ 226.7, 512, Wage Order 4 and/or 5 and Corresponding California Code of Regulations**

41.    Plaintiff, on behalf of herself and Class Members, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

42.    Pursuant to California law, Kindred was and/or is the employer of Plaintiff and Class Members.

43.    Cal. Lab. Code §§ 226.7, 512, Wage Order 4 and 5 and corresponding California Code of Regulations require employers to provide all employees with one 30-minute duty-free meal period if such employee works more than five hours in one day and a second 30-minute duty-free meal period if such employee work more than 10 hours in one day and require employers to pay a meal break penalty for non-compliance with California meal break requirements.

44.    Kindred did not provide Plaintiff and Class Members with 30-minute duty-free meal periods as required by California law

45.    Accordingly, pursuant to Cal. Lab. Code § 226.7, Wage Order 4 and/or 5 and corresponding California Code of Regulations, Plaintiff and Class Members are entitled one hour of pay at their regular rate of pay for each day on which the Class Member was not provided with a 30-minute duty-free meal period, plus interest.

//

//

//

## X. FOURTH CLAIM

### Failure to Authorize and Permit Compliant Rest Periods

### Cal. Lab. Code § 226.7, Wage Order 4 and/or 5 and Corresponding California Code of Regulations

46.     Plaintiff, on behalf of herself and Class Members, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

47.     Pursuant to California law, Kindred was and/or is the employer of Plaintiff and Class Members.

48.     Wage Order 4 and 5 and corresponding California Code of Regulations require employers to authorize and permit all employees to take one 10-minute duty-free rest period for every four hours worked each day, or major fraction thereof and require employers to pay a rest break penalty for non-compliance with California rest break requirements.

49.     Kindred did not provide Plaintiff and Class Members or an identifiable subset thereof with 10-minute duty-free rest periods as required by California law.

50.     Accordingly, pursuant to Cal. Lab. Code § 226.7, Wage Order 4 and/or 5 and corresponding California Code of Regulations, Plaintiff and Class Members are entitled one hour of pay at their regular rate of pay for each day on which the Class Member was not provided with a 10-minute duty-free rest period, plus interest.

## XI.  FIFTH CLAIM

### Failure to Pay Wages When Due

### Cal. Lab. Code §§ 201, 202, 203, 204

51.     Plaintiff, on behalf of herself and Class Members, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

52.     Pursuant to California law, Kindred was and/or is the employer of Plaintiff and Class Members.

53.     Cal. Lab. Code § 201 states that if an employer discharges an employee, the wages

earned and unpaid at the time of discharge are due and payable immediately. Cal Lab. Code §
202 states If an employee not having a written contract for a definite period quits his or her
employment, his or her wages shall become due and payable not later than 72 hours thereafter,
unless the employee has given 72 hours previous notice of his or her intention to quit, in which
case the employee is entitled to his or her wages at the time of quitting.  Cal. Lab. Code § 204
require wages be due at least twice during each calendar month.

54.    Kindred failed to timely pay Plaintiff and Class Members or an identifiable subset thereof
all of their wages earned during their employment and upon the termination of their respective
employment relationships with Kindred.

55.    Accordingly, pursuant to Cal. Lab. Code § 203, Plaintiff and Class Members are entitled
to waiting time penalties.

## XII.  SIXTH CLAIM

### Failure to Keep Accurate Employment Records

### Cal. Lab. Code §§ 226, 1174, 1174.5, Wage Order 4 and/or 5 and Corresponding California Code of Regulations

56.    Plaintiff, on behalf of herself and Class Members, realleges and incorporates by reference
the allegations in the preceding paragraphs as if fully alleged herein.

57.    Pursuant to California law, Kindred was and/or is the employer of Plaintiff and Class
Members.

58.    Labor Code § 1174(d) requires that every employer in California maintain "payroll
records showing the hours worked daily by and the wages paid to, and the number of piece-rate
units earned by and any applicable piece rate paid to, employees employed" in California.  In
addition, Cal. Lab. Code § 1174(d) requires that these records "be kept in accordance with rules
established for this purpose by the [Industrial Welfare] commission."

59.    Rules established by the Industrial Welfare Commission, Wage Order 4 and 5, § 7, and
the corresponding California Code of Regulations require that every employer in California

"keep accurate information with respect to each employee," including without limitation, "time records showing when the employee begins and ends each work period," as well as "[m]eal periods, split shift intervals and total daily hours worked."

60.    Cal. Lab. Code § 226 requires employers to keep information specified by Cal. Lab. Code § 226(a).

61.    Kindred failed to maintain accurate records in compliance with Cal. Lab. Code § 1174(d), § 226, Wage Order 4 and/or 5 and corresponding California Code of Regulations for Plaintiff and Class Members.

62.    Accordingly, Plaintiff and Class Members are entitled to collect and seek a civil penalty from Kindred pursuant to Cal. Lab. Code § 1174.5 and/or § 226.

## XIII.  SEVENTH CLAIM

### Unlawful, Unfair, or Fraudulent Business Practices

### Cal. Bus. & Prof. Code § 17200, *et seq.*

63.    Plaintiff, on behalf of herself and Class Members, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

64.    Pursuant to California law, Kindred was and/or is the employer of Plaintiff and Class Members.

65.    Kindred's violations of the above cited Labor Code provisions, Wage Order 4 and/or 5 and/or corresponding California Code of Regulations constitute unlawful, unfair and/or fraudulent business practices prohibited by California Business & Professions Code § 17200, *et seq.* and are independently actionable under California Business & Professions Code § 17200, *et seq.*

66.    As described above, Kindred's violations of the California Labor Code, Wage Order 4 and/or 5 and/or corresponding California Code of Regulations caused Plaintiff and Class Members irreparable harm, and Plaintiff and Class Members are therefore entitled to restitution in the amount of this harm, as well as injunctive and declaratory relief.

67.     Plaintiff are further entitled to, and do, seek a declaration that the above described business practices are unlawful, unfair and/or fraudulent and also seek injunctive relief restraining Kindred from engaging in any of these unlawful, unfair and/or fraudulent business practices.

## XIV. EIGHTH CLAIM

### Penalties Pursuant to the Labor Code Private Attorneys General Act of 2004 (Representative Action)

68.     Plaintiff, on behalf of "All persons who are or were employed by one or more Kindred-Affiliated Entities as non-exempt Skilled Clinicians to work at a skilled nursing facility in California at any time from February 14, 2018 through September 1, 2020", realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

69.     Cal. Lab. Code § 2699 provides for civil penalties for violations of California Labor Code provisions that may be recovered through a civil action brought by an aggrieved employee.

70.     Plaintiff and all current and former SCs in California are aggrieved employees as defined by Cal. Lab. Code § 2699(c) because they suffered injury as a result the following Labor Code violations committed by Kindred: Cal. Lab. Code §§ 201, 202, 203, 204 (failure to pay SCs wages when due); § 226 (failure to provide SCs with properly itemized statements); §§ 226.7, 512 (failure to provide or authorize and permit SCs with uninterrupted, duty-free meal and rest periods); §§ 510, 1194, 1197, and 1198 (failure to pay SCs wages for hours worked, including but not limited to overtime hours)); §§ 226, 1174, 1174.5 (failure to maintain employment and/or payroll records).

71.     Plaintiff has complied with the notice requirement of Cal. Lab. Code § 2699.3 by sending written notice by certified mail to Defendant and electronic notice to the California Labor & Workforce Development Agency ("LWDA") with respect to all Labor Code, Industrial Welfare Commission Wage Order and California Code of Regulations violations asserted in this Complaint.

72.     It has been 65 days or more since the LWDA was notified of certain Labor Code violations asserted in this Complaint, and the LWDA has not provided any notice that it will or will not investigate the alleged violations of which it was informed.

73.     Kindred has not cured the Labor Code violations of which it was informed.

74.     As a result, Plaintiff are entitled to recover, and seek, civil penalties, attorney fees, and costs of suit herein.

## **PRAYER FOR RELIEF**

75.     Plaintiff, on behalf of themselves and the members of each putative class, pray for relief as follows:

a.      Certification of this action as a class action as described herein;

b.      Designation of Plaintiff as representatives of the putative class;

c.      Designation of Plaintiff's Counsel as Class Counsel for the putative class;

d.      Damages (including liquidated damages) for failure to pay minimum, straight time and/or overtime wages, failure to provide meal periods, and failure to authorize and permit rest periods;

e.      In the alternative to such damages, restitution pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*

f.      Statutory penalties, including pursuant to Cal. Lab. Code §§ 226, 203, and 1174.5;

g.      Civil penalties pursuant to the Labor Code Private Attorneys General Act of 2004;

h.      Injunctive and declaratory relief pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*;

i.      Pre-judgment and post-judgment interest pursuant to the California Labor Code and Cal. Civ. Code § 3287;

j.      Declaratory relief;

k.      Attorneys' fees as provided by the California Labor Code, or as provided by the parties' agreement, if any;

l.      Costs as provided by the California Labor Code, Fed. R. Civ. P. 54(d), Local Rule

54-3, and/or Cal. Code Civ. P. § 1021, or as provided by the parties' agreement, if

any; and

m.     Any other relief the Court deems proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, by and through her attorney, hereby request a jury trial on all issues so triable.


Dated: October 1, 2020                          LAW OFFICE OF MATTHEW D. CARLSON


                                        By:  /s/ *Matthew D. Carlson*_____
                                             Matthew D. Carlson
                                             Attorney for Plaintiff