Matthew D. Carlson (State Bar No. 273242)
mdcarlson@mdcarlsonlaw.com
LAW OFFICE OF MATTHEW D. CARLSON
50 Fountain Plaza, Suite 1400, #206
Buffalo, NY 14202
Telephone: (716) 242-1234

Attorney for Plaintiff SARAH STONEHOCKER

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH STONEHOCKER, on behalf of herself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>KINDRED HEALTHCARE OPERATING, LLC and DOES 1-25,<br><br>Defendants. | **Case No.: 4:19-cv-02494-YGR**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:   April 6, 2021<br>Time:   2:00 p.m.<br>Judge:   Hon. Yvonne Gonzalez Rogers<br>Dept.:   Courtroom 1, Fourth Floor<br><br>Complaint Filed: February 14, 2019<br>(San Francisco Superior Court) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 6, 2021, at 2:00 p.m., in Courtroom 1, Fourth Floor, of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, 94612, Plaintiff Sarah Stonehocker, individually and on behalf of all others similarly situated, will, and hereby does, move the Court pursuant to the parties' Joint Stipulation and Class and Representative Action Settlement Agreement and Release ("Settlement Agreement" or "Agreement") and Fed. R. Civ. P. 23 for an order granting final approval to the parties' Class Settlement.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the Declaration of Mary Butler in Regarding Notice and Settlement Administration ("Butler Decl.") filed concurrently herewith; any supporting exhibits filed herewith; all other pleadings and papers filed in this action; and any argument or evidence that may be presented at or prior to the hearing in this matter.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   CASE HISTORY ...................................................................................................3

    A.    Litigation History.....................................................................................3

    B.    Mediation-Related Discovery ..................................................................4

    C.    Mediation .................................................................................................5

    D.    Preliminary Approval of the Class Settlement.........................................5

    E.    Results of the Notice Period ....................................................................6

III.  LEGAL STANDARD .............................................................................................7

IV.   DISCUSSION .........................................................................................................8

    A.    The *Hanlon* Factors Favor Final Approval .............................................8

        1.    The Strength of Plaintiff's Case..................................................8

        2.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation ........................................................................11

        3.    The Risk of Maintaining Class Action Status Through Trial ...................11

        4.    The Amount Offered in Settlement............................................12

        5.    The Extent of Discovery Completed and the Stage of the Proceedings ...............................................................................13

        6.    The Experience and Views of Counsel ......................................13

        7.    The Presence of a Governmental Participant.............................14

        8.    The Reaction of Class Members to the Proposed Settlement ...................14

    B.    The *Bluetooth* Factors Favor Final Approval .......................................15

V.    CONCLUSION......................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Acosta v. Trans Union, LLC*,
   243 F.R.D. 377 (C.D. Cal. 2007) ............................................................13

*Alberts v. Aurora Behavioral Health Care*,
   241 Cal. App. 4th 388 (2015) ..................................................................9

*Amey v. Cinemark USA Inc.*,
   2015 U.S. Dist. LEXIS 63524 (N.D. Cal. 2015) ...................................10

*Brewer v. Gen. Nutrition Corp.*,
   No. 11-CV-3587 YGR, 2014 WL 5877695 (N.D. Cal. Nov. 12, 2014)....................9

*Brinker Rest. Corp. v. Superior Court*,
   53 Cal. 4th 1004 (2012) ...........................................................................9

*Cashon v. Kindred Healthcare Operating, LLC*,
   Case No. 3:16-cv-04889-RS ....................................................................3

*Ching v. Siemens Indus., Inc.*,
   2014 WL 2926210 (N.D. Cal. June 27, 2014) ...............................11, 13

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir.1992) ...................................................................7

*Cooley v. Indian River Transp. Co.*,
   2019 WL 2077029 (E.D. Cal. May 10, 2019) ................................12, 15

*Cotter v. Lyft, Inc.*,
   193 F. Supp. 3d 1030 (N.D. Cal. 2016) ...................................................2

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ..........................................15

*Ebarle v. Lifelock, Inc.*,
   No. 15-CV-00258-HSG, 2016 WL 5076203 (N.D. Cal. Sept. 20, 2016)....................16

*Franco v. Ruiz Food Prod., Inc.*,
   2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) .....................................8, 11

*Giroux v. Essex Prop. Tr., Inc.*,
   No. 16-CV-01722-HSG, 2019 WL 2106587 (N.D. Cal. May 14, 2019)..........................1, 14

*Gonzalez v. Corecivic of Tennessee, LLC*,
   2020 WL 5891592 (E.D. Cal. Oct. 5, 2020) ............................................8

*Gribble v. Cool Transports Inc.*,
   2008 WL 5281665 (C.D. Cal., Dec. 15, 2008) ......................................14

*Gutierrez-Bejar v. SOS Int'l, LLC*,
   2019 WL 5683901, *9 (C.D. Cal. Nov. 1, 2019)…………………………...............................14

iii

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................8, 15

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ..............................................................8, 15, 16

*In re High-Tech Employee Antitrust Litigation*,
    No. 11-CV-02509-LK, 2015 WL 5158730 (N.D. Cal. Sep. 2, 2015)........................16

*In re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ...............................................................................7

*In re Sony PS3 "Other OS" Litig.*,
    No. 10-CV-01811-YGR, 2017 WL 424716 (N.D. Cal. Jan. 31, 2017) ....................8

*In re TracFone Unlimited Serv. Plan Litig.*,
    112 F. Supp. 3d 993 (N.D. Cal. 2015) .............................................................15

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ...........................................................................13

*Keller v. Elec. Arts, Inc.*
    2015 WL 5005057 (N.D. Cal. Aug. 18, 2015) ................................................14

*Koumoulis v. LPL Financial Corp.*,
    2010 WL 4868044 (S.D. Cal., Nov. 19, 2010) ................................................14

*Larsen v. Trader Joe's Co.*,
    No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ...............16

*Lopez v. Friant & Assocs., LLC*,
    15 Cal. App. 5th 773 (2017) ...........................................................................10

*Lusby v. GameStop Inc.*,
    No. C12-03783 HRL, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015).............12, 15

*Maciel v. Bar 20 Dairy, LLC*,
    2020 WL 5095885 (E.D. Cal. Aug. 28, 2020) ................................................12

*Moore v. PetSmart, Inc.*,
    2015 WL 5439000 (N.D. Cal. Aug. 4, 2015) ................................................8, 12

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)...............................................7, 8, 11, 14

*Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ...............................................................8, 9, 12

*Oppenlander v. Standard Oil Co. (Indiana)*,
    64 F.R.D. 597 (D. Colo. 1974) .......................................................................11

*Rivas v. BG Retail, LLC*,
    No. 16-CV-06458-BLF, 2020 WL 264401 (N.D. Cal. Jan. 16, 2020) ...................12

TABLE OF AUTHORITIES

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..........................................................................................11, 13

*Smith v. Am. Greetings Corp.*,
    No. 14-V-02577-JST, 2016 WL 2909429 (N.D. Cal. May 19, 2016) .....................................16

*Spann v. J.C. Penney Corp.*,
    2016 WL 5844606 (C.D. Cal. Sept. 30, 2016) ........................................................................16

*Stovall-Gusman v. W.W. Granger, Inc.*,
    No. 13-CV-02540-HSG, 2015 WL 3776765 (N.D. Cal. June 17, 2015)..................................12

*Tadepalli v. Uber Technologies, Inc.*,
    No. 15-CV-04348-MEJ, 2016 WL 1622881 (N.D. Cal., Apr. 25, 2016) ................................16

*Tijero v. Aaron Bros., Inc.*,
    301 F.R.D. 314 (N.D. Cal. 2013)......................................................................................12, 15

**<u>Statutes</u>**

Cal. Lab. Code § 226 .................................................................................................................10

Cal. Lab. Code § 226.3 ..............................................................................................................10

Cal. Lab. Code § 2699(e)(2) ......................................................................................................10

**<u>Other Authorities</u>**

N.D. Cal. Procedural Guidance for Class Action Settlements..........................................................7

**<u>Rules</u>**

Fed. R. Civ. P. 23........................................................................................................................1

Fed. R. Civ. P. 23(e) ...................................................................................................................7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

Plaintiff Sarah Stonehocker hereby seeks final approval of a Class Settlement that will resolve class wage and hour claims arising from Skilled Clinicians'[1] work at Defendants' Skilled Nursing Facilities ("SNFs") in California.

The Court previously preliminarily approved the Class Settlement, certifying the proposed class under Rule 23 and finding the terms of the Class Settlement to be "preliminarily…fair, reasonable, and adequate." Dkt. No. 64 (Modified Order Granting Preliminary Approval of Class Action Settlement and Order Approving PAGA Settlement ("Prelim. Appr. Order")) at ¶¶ 2, 3, 8.[2]  The Court authorized distribution of the Class Notice to Class Members, *id.* at ¶¶ 5, 7, 11-16, 22, the results of which demonstrate that Class Members **overwhelmingly approve** of the Class Settlement: **Zero Class Members have objected to the Class Settlement, and just *two* Class Members out of the 2,263 member Class have opted out.** *See Giroux v. Essex Prop. Tr., Inc.*, No. 16-CV-01722-HSG, 2019 WL 2106587, *5 (N.D. Cal. May 14, 2019) ("The Court finds that the absence of objections and very small number of opt-outs [12 opt-outs in class of 2,416] indicates *overwhelming support* among the class members and weighs in favor of approval.") (emphasis added).

At the preliminary approval stage, the Court reviewed, *inter alia*, the propriety of class certification under Rule 23, the amount offered in settlement, the parties' exchange of documents and information, the legal and factual strengths and weaknesses and realistic value of claims, the risks of continued litigation, counsel's experience, the release of claims, notice process, plan of distribution, and procedural propriety of the settlement. *See* Memo. ISO Prelim. Appr. at pp. 12-18 and Agreement at ¶ 5 (discussing class certification); Agreement at ¶ 3 (discussing amount of Settlement); Carlson Prelim Appr. Decl. at ¶¶ 5-6 (discussing exchange of documents and

---

[1]    As defined in Exhibit A to the Settlement Agreement.

[2]    The Court also previously approved the parties' PAGA settlement; only the Class Settlement component of the Settlement Agreement requires further approval. *Id.* at ¶¶ 9-10. The PAGA Settlement is conditioned, however, on the final approval of the Class Settlement. Agreement at ¶¶ 5.2, 6.6, 7.8, 7.10, 8.2; Prelim. Appr. Order at ¶¶ 10, 20.

1  information); Carlson Prelim. Appr. Decl. at ¶¶ 8-56 (analysis and valuation of claims); Carlson

2  Prelim. Appr. Decl. at ¶¶ 8-56 (discussing risks of continued litigation); Carlson Prelim. Appr.

3  Decl. at ¶¶ 66-73 (discussing counsel's experience); Memo. ISO Prelim. Appr. at pp. 3, 23-24 and

4  Agreement at ¶ 4 (discussing release); Memo. ISO Prelim. Appr. at pp. 3, 24-25 and Agreement

5  at ¶ 6.3 and Exh. 2 thereto (discussing notice process and Class Notice); Memo. ISO Prelim.

6  Appr. at pp. 6-7, 28 and Agreement at ¶ 3.1 (discussing plan of distribution); Agreement at ¶¶ 6-8

7  (setting out procedural aspects of Class Settlement).

8          In granting preliminary approval, the Court specifically assessed, *inter alia*: the "probable

9  outcome of further litigation, given the risks relating to liability and damages"; "that investigation

10  and research has been conducted such that counsel for the Parties [were] reasonably able to

11  evaluate their respective positions"; that "the Settlement will avoid substantial additional costs by

12  all parties"; that "the Settlement will avoid the delay and risks that would be presented by the

13  further prosecution of the Action"; that "[the Settlement] will provide substantial benefits to the

14  Class going forward"; that "the Settlement treats Class Members equitably relative to each other";

15  that "the Settlement has been reached as a result of intensive, arm's-length negotiations utilizing

16  an experienced third-party neutral mediator"; the plan of distribution of funds; and the lack of an

17  objection to the PAGA Settlement by the State. Prelim. Appr. Order at ¶ 2, 9, 17. In granting

18  preliminary approval, the Court also appointed Plaintiff's counsel as Class Counsel, stating

19  "based on the work Class Counsel has done identifying, investigating, and prosecuting the claims

20  in this action; Class Counsel's experience in handling class actions and claims; Class Counsel's

21  knowledge of the applicable law; and the resources Class Counsel has and will commit to

22  representing the class, that Class Counsel has represented and will represent the interests of the

23  Class fairly and adequately." Prelim. Appr. Order at ¶ 5.

24          Thus, the Court reviewed the substantive and procedural terms of the Class Settlement at

25  the preliminary stage with the rigor applicable at the final approval stage. *See Cotter v. Lyft, Inc.*,

26  193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016) ("courts should review class action settlements just

27  as carefully at the initial stage as they do at the final stage…rather than kicking the can down the

28

road."). As described herein, nothing has happened since preliminary approval and during the notice process that should alter the Court's conclusion that the settlement is "fair, reasonable, and adequate." Accordingly, the Court should grant final approval to the Class Settlement.

## II.    CASE HISTORY

### A.    Litigation History

On February 14, 2019, Plaintiff filed her original Complaint, Case No. CGC-19-573756, against Defendant in the Superior Court of California for the County of San Francisco. *See* Carlson Prelim. Appr. Decl. at ¶ 3. On April 2, 2019, while the case was still pending in state court, Plaintiff filed her currently operative First Amended Complaint ("1AC"), around which time Plaintiff also served Defendant. *Id*. In her 1AC, Plaintiff asserted three claims on behalf of herself and all other Skilled Clinicians who worked in Kindred SNFs: (1) failure to compensate Skilled Clinicians for off the clock hours worked; (2) failure to pay Skilled Clinicians their wages when due (a derivative of Plaintiff's off the clock claim), and (3) unfair business practices (an Unfair Competition Law claim that "borrowed" Plaintiff's overtime claim). *Id.* Plaintiff's general theory of the case was that, as a result of Kindred's unrealistic productivity standards, she and other individuals who worked as Skilled Clinicians at Kindred's SNFs worked off the clock hours for which they were not paid. *Id.*

Following assignment of the case to this Court, the parties agreed that the Court would need to resolve the issue of whether the class settlement in *Cashon v. Kindred Healthcare Operating, LLC*, Case No. 3:16-cv-04889-RS, barred Plaintiff's individual claims and thereby lacking standing to assert to class claims in this case. *See* Carlson Prelim. Appr. Decl. at ¶ 4; *see also* Dkt. No. 16. On September 19, 2019, after full briefing on the issue, the Court denied Kindred's Motion for Summary Judgment. Carlson Prelim. Appr. Decl. at ¶ 4; *see also* Dkt. No. 30.  In October 2019, the parties began discussing the possibility and parameters of a potential mediation of the claims asserted in the 1AC as well as claims for meal and rest break violations, wage statement violations and related derivative claims which had not been asserted. Carlson Prelim. Appr. Decl. at ¶ 4.

Following extensive discussions regarding the scope and type of information and documents needed for a thorough mediation, the parties agreed that experienced wage and hour mediator Tripper Ortman would be best suited to help the parties resolve this action. *Id.* Due to Mr. Ortman's schedule, the complicated nature of Kindred's retrieval of data and documents needed for mediation, and the lack of availability of other similarly experienced mediators, the parties' mediation was scheduled for May 20, 2020.

**B.     Mediation-Related Discovery**

In advance of mediation, Plaintiff produced numerous documents for mediation purposes, including, for example, various emails and spreadsheets Plaintiff received in the course of her work as a temporary first level "Program Director." Carlson Prelim. Appr. Decl. at ¶ 5. These documents showed, *inter alia*, that Class Members and PAGA Releasees have been subject to productivity metrics regarding direct patient care, including the use of Patient Care Ratios ("PCRs"), and that at least some Kindred supervisors monitored overtime hours worked by Class Members and PAGA Releasees whom they supervised. *Id.*

Kindred produced numerous categories of documents for mediation purposes including, for example:

- Job descriptions (showing, *inter alia*, that Class Members and PAGA Releasees were or are non-exempt employees and provide(d) skilled direct patient care);

- Numerous wage and hour-related policies, practices, and procedures including those pertaining to off the clock work, meal periods, and rest periods (including multiple Kindred policies regarding, *inter alia*, timekeeping responsibilities, prohibition of off the clock work, and requirements relating to meal and rest periods);

- Sample arbitration provisions;

- Policies, practices, and procedures concerning patient documentation;

- Daily workflow graphs and attendant instructions on how to use a timekeeping application for, *inter alia*, scheduling, patient recordkeeping, and time worked.

Carlson Prelim. Appr. Decl. at ¶ 6. Kindred also produced information needed to value claims including the following data:

4

- Number of Class Members during multiple time periods;

- Number of Class Members during the relevant time period whose employment with Kindred has ended;

- Average base hourly rate of pay across Class Members during the relevant time period;

- Aggregate number of calendar days worked by Class Members during the relevant time period;

- Aggregate number of workweeks worked by Class Members during the relevant time period;

- Aggregate number of pay periods worked by Class Members and PAGA Releasees during multiple time periods; and

- The number of Class Members who have signed an arbitration agreement with Kindred and did not opt out.

*Id*.

Using this data and extrapolations therefrom (*e.g.*, to account for the time from the data production to the release cutoff date of September 1, 2020), Plaintiff was able to assign realistic dollar values, if any, to each claim in light of the provided data as well as the factual and legal risks associated with each claim. *See* Carlson Prelim. Appr. Decl. at ¶¶ 8-56.

## C.    Mediation

On May 20, 2020, the parties engaged in an approximately 10-hour long mediation with Mr. Ortman via Zoom, with counsel and the parties present for the duration of the mediation. Carlson Prelim. Appr. Decl. at ¶ 7. After thorough negotiations concerning PAGA and Class Claims, the mediation ended with an executed Memorandum of Understanding, which formed the basis for the Settlement Agreement. *Id.*

## D.    Preliminary Approval of the Class Settlement

On November 24, 2020, the Court granted preliminary approval to the Class Settlement. *See*, *e.g.*, Prelim. Appr. Order at ¶¶ 2, 17.  As discussed above, the Court closely scrutinized the substantive and procedural fairness of the Class Settlement, and in light of, *inter alia*, the amount of the settlement, the strength and weaknesses of Plaintiff's claims, risks of continued litigation, the parties' exchange of information, and the experience and views of counsel, the Court

5

concluded that the Class Settlement was "preliminarily…fair, reasonable, and adequate." *Id*. The Court also approved for settlement purposes the proposed Class, appointed Plaintiff's counsel as Class Counsel, authorized dissemination of the Class Notice in accordance with the terms of Settlement Agreement, and set forth a Notice Period and post-preliminary approval schedule consistent with the Settlement Agreement, Local Rules, and Ninth Circuit precedent. Prelim. Appr. Order at ¶¶ 5, 7, 11-16, 22.

**E.    Results of the Notice Period**

On January 5, 2021, in accordance with the terms of the Settlement Agreement and post-preliminary approval schedule set by the Court, the Settlement Administrator, Simpluris, Inc., distributed the Class Notice via mail to 2,263 Class Members. Butler Decl. at ¶ 8.[3] Pursuant to the Preliminary Approval Order, Class Members were given until February 19, 2021 to opt out of or object to the Class Settlement and to submit any challenges to their estimated payment amounts.[4] Prelim. Appr. Order at ¶ 22. The Settlement Administrator received zero objections,[5] two requests for exclusion, and zero challenges to payment amounts. Butler Decl. at ¶¶ 10-12 Further, it does not appear that the Court has received any objections to the Class Settlement.

If the Court grants final approval to the Class Settlement, all Class Members who did not properly and timely opt out will receive Individual Settlement Payments per the terms of the Class Settlement, and all PAGA Releasees will also receive their PAGA Settlement payments. *See* Agreement at ¶ 3.1(c), (f). Pursuant to the Settlement Agreement, the Settlement Administrator anticipates distributing funds to Class Members and PAGA Releasees in mid-June

---

[3]    Of these Class Members, 1,105 are Class Members as well as PAGA Releasees. *See* Butler Decl. at n. 2. These individuals were notified of the PAGA Settlement and their status as PAGA Releasees in the Class Notice, though they did not have the right to opt out or object to the PAGA Settlement. *See* Class Notice at p. 2.

[4]    Class Members and PAGA Releasees were also given until February 19, 2021 to dispute the amount of their payment under the Agreement. *Id.*

[5]    The Agreement and Preliminary Approval Order required objections to be submitted to the Court to be effective. *See* Prelim. Appr. Order at ¶¶ 14, 22(e); Agreement at ¶ 6.7. Nonetheless, Plaintiff notes that the Settlement Administrator did not receive any objections.

2021. *See* Agreement at ¶ 2.51, 6.8(a).[6]  Funds remaining from uncashed checks will be directed to the approved *cy pres* beneficiary, First Responders Children's Foundation COVID-19 Emergency Response Fund, with 95% of *cy pres* funds to benefit clinicians at skilled nursing facilities in California, and 5% of *cy pres* funds to benefit clinicians at skilled nursing facilities in States other than California. Prelim. Appr. Order at ¶ 18. No portion of the settlement funds will revert to Defendants. Agreement at ¶ 2.23; *see also* Prelim. Appr. Order at ¶ 2. Once all funds are distributed, Plaintiff will submit an accounting of the distribution of settlement funds. *See* Prelim. Appr. Order at ¶ 21; *see also* N.D. Cal. Procedural Guidance for Class Action Settlements.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court ..." Fed. R. Civ. P. 23(e) (2003). "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). The "universally applied standard" in determining whether a court should grant final approval to a class action settlement is whether the settlement is "fundamentally fair, adequate, and reasonable." *Id.* (citing *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995) and *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.1992), *cert. denied.*, 506 U.S. 953 (1992)).

Courts in the Ninth Circuit typically weigh the following eight factors to determine whether a proposed class action settlement is fair, reasonable, and adequate: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the

---

[6]    As discussed at the preliminary approval stage, shares of the Class Settlement will be calculated based on pay periods worked during the class Settlement Period. *See* Agreement at ¶¶ 2.10, 3.1(f). Shares of the PAGA Settlement are calculated in the similar manner based on the PAGA Settlement Period. Agreement at ¶ 2.34, 3.1(f).

experience and views of counsel; (7) the presence of a governmental participant; (8) and the reaction of the class members to the proposed settlement. *See In re Sony PS3 "Other OS" Litig.*, No. 10-CV-01811-YGR, 2017 WL 424716, *1 (N.D. Cal. Jan. 31, 2017) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).[7] "[D]istrict courts have wide discretion in assessing the weight and applicability of each factor", and "[t]he relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 525 (citing *Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

Additionally, the Court must look for "subtle signs" of collusion. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal citations omitted). Such signs are: (1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id.*

## IV. DISCUSSION

### A. The *Hanlon* Factors Favor Final Approval

#### 1. The Strength of Plaintiff's Case

"[This] factor addresses Plaintiffs' likelihood of success on the merits and the range of possible recovery." *Franco v. Ruiz Food Prod., Inc.*, 2012 WL 5941801, at *11 (E.D. Cal. Nov. 27, 2012). "There is no particular formula by which that outcome must be tested", *Moore v. PetSmart, Inc.*, 2015 WL 5439000, *5 (N.D. Cal. Aug. 4, 2015), *appeal dismissed* (July 27, 2016), and "determining the probability and likelihood of a plaintiff's success on the merits of a class action litigation, 'the district court's determination is [often] nothing more than an amalgam

---

[7]    While Plaintiff's separate request for attorney's fees is assessed under California law, the traditional Ninth Circuit final approval factors apply. *See*, *e.g.*, *Gonzalez v. Corecivic of Tennessee, LLC*, 2020 WL 5891592, *3-11 (E.D. Cal. Oct. 5, 2020).

of delicate balancing, gross approximations and rough justice.'" *Id.* (quoting *Officers for Justice*, 688 F.2d at 625).

Here, Plaintiff has submitted to the Court a good faith valuation of claims, *see* Carlson Prelim. Appr. Decl. at ¶¶ 8-56 (detailed valuation of factual and legal strengths and weaknesses of claims), and the Court has concluded that the settlement is reasonable in light of this valuation. *See* Prelim. Appr. Order at ¶¶ 2, 9, 17. While Plaintiff believed in her claims and theory of liability and valued them accordingly, the parties' exchange of documents and information revealed significant legal and factual impediments to recovery, even with respect to the strongest claims at issue – failure to pay for all hours worked and derivative PAGA claims. *See* Carlson Prelim. Appr. Decl. at ¶¶ 13-25, 40-50.

For example, Kindred's robust policies regarding off the clock work, and most notably the attestation requirement in its timekeeping app regarding off the clock work, would make it challenging for Plaintiff to establish liability, particularly on a classwide basis. *See Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1051 (2012) (liability for an off the clock claim is "contingent on proof that [a defendant] knew or should have known off-the clock work was occurring" and "that employees are clocked out creates a presumption they are doing no work, a presumption [] the putative class members have the burden to rebut."). And while Kindred did have productivity standards, this fact alone would not be sufficient evidence to certify a class. *See Brewer v. Gen. Nutrition Corp.*, No. 11-CV-3587 YGR, 2014 WL 5877695, *13 (N.D. Cal. Nov. 12, 2014) ("evidence of [productivity] incentives alone does not establish a common issue for class certification."). Absent evidence linking productivity to off the clock work with respect to all Class Members, it is likely that class certification would have hinged on anecdotal evidence from Class Members, in which case issues of trial manageability become magnified. *Alberts v. Aurora Behavioral Health Care*, 241 Cal. App. 4th 388 (2015) (Rothschild, P.J., concurring) ("In a case like this one, where plaintiffs' primary allegations are that the hospital had de facto illegal policies, as opposed to policies illegal on their face, individual evidence is likely to be central both to plaintiffs' case and to the hospital's defense."). Further, even if liability was established on

a classwide basis, Plaintiff may have faced significant challenges with proving damages when Class Members did not record the off the clock hours allegedly worked. Moreover, Kindred had arbitration agreements with approximately 7% of the class, *see* Carlson Prelim. Appr. Decl. at ¶ 53, which could have resulted in the exclusion of those Class Members from pursuing this claim.

With respect to derivative PAGA claims for failure to pay for all hours worked and deficient wage statements,[8] Plaintiff faced arguments that PAGA claims could be "unmanageable", *see Amey v. Cinemark USA Inc.*, 2015 U.S. Dist. LEXIS 63524, *50-51 (N.D. Cal. 2015) ("[W]hen the evidence shows, as it does here, that numerous individualized determinations would be necessary to determine whether any class member has been injured by [defendant's] conduct, then allowing a representative action [under PAGA] to proceed is inappropriate."), and that any PAGA penalties would be reduced by the Court to a fraction of what might have been recovered as damages. *See* Cal. Lab. Code § 2699(e)(2) ("a court may award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory").

Further, there remained the risk that Kindred could successfully appeal this Court's ruling that the *Cashon* settlement does not bar Plaintiff's claims. While Plaintiff was confident that the Court's ruling is correct, it was nonetheless a serious risk, as a reversal on that issue would have been catastrophic to Plaintiff's ability to assert claims on behalf of the Class. Thus, Plaintiff's path forward with respect to class certification, liability, and damages was uncertain, and the strengths of Plaintiff's claims weighed against and legal and factual challenges to Plaintiff's case favors final approval.

---

[8]    As discussed in Plaintiff's preliminary approval papers, Carlson Prelim. Appr. Decl. at ¶¶ 47-49, Plaintiff's wage-statement based PAGA claims may have had value pursuant to Cal. Lab. Code § 226.3, rather than Cal. Lab. Code § 226, because section 226.3 does not contain the scienter requirement necessary to recover penalties for wage statements under section 226. *See Lopez v. Friant & Assocs., LLC,* 15 Cal. App. 5th 773, 788 (2017). For the reasons set forth in counsel's preliminary approval declaration, it likely would have been difficult to prove the scienter requirement in section 226.

2.    *The Risk, Expense, Complexity, and Likely Duration of Further Litigation*

This factor considers "the probable costs, in both time and money, of continued litigation." *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, *4 (N.D. Cal. June 27, 2014). "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Franco v. Ruiz Food Prod., Inc.*, 2012 WL 5941801, *12 (E.D. Cal. Nov. 27, 2012) (citing *DIRECTV, Inc.*, 221 F.R.D. at 526).

Had the parties not reached this settlement, there remained extensive, costly, and complex litigation to follow. For example, the parties had yet to submit summary judgment briefing on the merits, contested class certification briefing, or inevitable briefing on a motion to compel arbitration with respect to Class Members with arbitration agreements. There also remained a high likelihood of interlocutory appeals related to class certification and arbitration. Additionally, had the parties reached the trial stage, this case may have presented a costly and complicated trial potentially spanning several weeks, which would necessitate extensive and costly pre-trial preparation. Then, following trial, there would undoubtedly have been additional lengthy, time-intensive, and costly appeals. Thus, the length, expense, and uncertainty surrounding future litigation weigh in favor of final approval. *See Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) ("It has been held proper 'to take the bird in the hand instead of a prospective flock in the bush.'").

3.    *The Risk of Maintaining Class Action Status Through Trial*

As discussed above, Plaintiffs faced risk in maintaining class action status through trial, particularly in light of the uncertain footing for her productivity-based theory of class certification and Kindred's arbitration provisions.  Such risks weigh in favor of granting final approval. *See, e.g., Ching*, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) ("Plaintiff has identified several meritorious arguments that Defendants could raise to class certification in the event this lawsuit was to proceed" such that "[g]iven the risk in obtaining and maintaining class certification, the Court finds that this factor weighs in favor of approving the settlement"); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (noting that "[a] district court may decertify a class at

any time" such that even after class certification, "the risk remained that the nationwide class might be decertified" and this factor therefore weighed in favor of settlement); *Moore*, 2015 WL 5439000, at *6 ("the notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement").

### 4.    The Amount Offered in Settlement

A settlement is, of course, a compromise. *See Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."); *see also id.* at 624 ("the very essence of a settlement is compromise, "a yielding of absolutes and an abandoning of highest hopes.").

Here, the $1,995,000 non-reversionary settlement fund appropriately balances the value of the case and the risks of future litigation discussed herein, and the gross average per-class member recovery of $880 exceeds gross per-class member average recoveries in other cases alleging failure to pay for all hours worked. *See Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 WL 1501095, *5, *6 (N.D. Cal. Mar. 31, 2015) ($750,000 gross settlement in failure to pay for all hours worked case with more than 13,000 class members ($57.69 per class member)); *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 319 (N.D. Cal. 2013); *Tijero* Dkt. No. 109 (05/28/14) ($800,000 gross settlement in failure to pay for all hours worked case with more than 6,000 class members ($133.33 per class member)); *Cooley v. Indian River Transp. Co.*, 2019 WL 2077029, *8 (E.D. Cal. May 10, 2019) ($1,400,000 gross settlement in failure to pay for all hours worked case with 2,303 class members ($607.90 per class member)).[9] Thus, the amount offered in settlement, particularly as compared to recoveries in similar cases, supports final approval.

---

[9]    The settlement fund represents approximately 17% of realistically recoverable damages and penalties, including the full amount of realistically recoverable PAGA penalties. *See* Carlson Prelim. Appr. Decl. at ¶¶ 8-56. As discussed in Plaintiff's Motion for Attorney's Fees, Costs, and Class Representative Service Award, the percentage of the potential recovery represented by a settlement is of limited utility, primarily because counsel have different ways of valuing their cases. Mot. for Fees at n. 7. Nonetheless, Plaintiff notes numerous wage and hour settlements with a percentage recovery far lower than 17%. *See, e.g.*, *Maciel v. Bar 20 Dairy, LLC*, 2020 WL 5095885, *14 (E.D. Cal. Aug. 28, 2020) (5% recovery); *Rivas v. BG Retail, LLC*, No. 16-CV-06458-BLF, 2020 WL 264401, *5 (N.D. Cal. Jan. 16, 2020) (6.12%); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-HSG, 2015 WL 3776765, *4 (N.D. Cal. June 17, 2015) (10%).

5.    *The Extent of Discovery Completed and the Stage of the Proceedings*

For the parties "to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007).

Here, the parties have exchanged extensive information necessary to make an informed evaluation of the case. *See* Carlson Prelim. Appr. Decl. at ¶¶ 5-6; Carlson Fee Decl. at ¶¶ 13 (discussing discovery plan tailored to the important issues in the case and analysis of documents and information Kindred and Plaintiff produced in advance of mediation). Indeed, Plaintiff, as former Kindred "Program Director", was in possession of highly probative documents and information at the outset of the case. *See* Carlson Prelim. Appr. Decl. at ¶ 5; Carlson Fee Decl. at ¶¶ 13, 22; Stonehocker Prelim. Appr. Decl. at ¶ 2-6; Stonehocker Fee Decl. at ¶ 3. Further, the parties litigated the impact of the *Cashon* settlement on this case, thus eliminating that uncertainty from the litigation – subject, of course, to appeal. *See* Dkt. No. 30. Put simply, Plaintiff was well-armed with the information – and counsel's experience – necessary to reach a reasonable compromise. This factor, therefore, favors final approval.

6.    *The Experience and Views of Counsel*

The Ninth Circuit has stated that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation," *Rodriguez*, 563 F.3d at 967, and "[a] district court is 'entitled to give consideration to the opinion of competent counsel that the settlement [is] fair, reasonable, and adequate.'" *Ching*, 2014 WL 2926210, at *5 (quoting *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996)).

Here, counsel with substantial experience in this field believes the settlement is in the best interests of the Class Members. *See* Carlson Prelim. Appr. Decl. at ¶¶ 56, ("taking into account all issues and risks related to liability, damages and class certification, and also considering the case law regarding fair, reasonable, and adequate settlements both in general and specific to off the clock cases, I believe this is an excellent settlement"); ¶ 73 ("In light of my experience, and specifically my experience litigating and resolving wage and hour class actions, I strongly believe

this settlement is an excellent result for Class Members and should be approved."); ¶¶ 66-73

(discussing previous wage and hour and settlement experience).

### 7.    The Presence of a Governmental Participant

While this factor is not relevant to the Class Settlement (as opposed to the PAGA

Settlement), the Court previously noted the LWDA's non-response to any terms of the

Settlement, which is "tantamount to [the LWDA's] consent to the proposed settlement terms."

*See* Prelim. Appr. Order at ¶ 9 (citing cases).

### 8.    The Reaction of Class Members to the Proposed Settlement

"It is established that the absence of a large number of objections to a proposed class

action settlement raises a *strong* presumption that the terms of a proposed class settlement action

are favorable to the class members." *Nat'l Rural Telecomms. Coop.,* 221 F.R.D. at 528–29

(emphasis added).

Here, the fact that there have been zero objections and just two requests for exclusion

from 2,263 Class Members shows their **overwhelming support** for the settlement. *See Giroux*,

2019 WL 2106587, at *5 ("The Court finds that the absence of objections and very small number

of opt-outs [12 opt-outs in class of 2,416] indicates *overwhelming support* among the class

members and weighs in favor of approval.") (emphasis added).[10] *See also*, *e.g.*, *Gutierrez-Bejar

v. SOS Int'l, LLC*, 2019 WL 5683901, *9 (C.D. Cal. Nov. 1, 2019) (noting this factor weighed in

favor of final approval where two of 1,666 class members opted out and zero class members

objected to settlement).[11]

Accordingly, all *Hanlon* factors weigh in favor of final approval.

---

[10]    It also shows Class Members' overwhelming support for Plaintiff's request for attorney's fees, costs, and class representative service award. *Id.*

[11]    Plaintiff notes that the 99.5% Class Notice "reach rate" in this case is excellent and unquestionably comports with due process. *See* Butler Decl. at ¶ 9; *compare Keller v. Elec. Arts, Inc.* 2015 WL 5005057, *5 (N.D. Cal. Aug. 18, 2015) (granting final approval and stating notice process with "almost 95%" reach rate provided "due and adequate notice to the Class"); *Gribble v. Cool Transports Inc.*, 2008 WL 5281665, *1 (C.D. Cal., Dec. 15, 2008) (granting final approval and describing notice process as "adequate" where plaintiff "put forth a reasonable effort" to deliver notice to 98% of the class); *Koumoulis v. LPL Financial Corp.,* 2010 WL 4868044, *3 (S.D. Cal., Nov. 19, 2010) (granting final approval where notice was delivered to 98% of the class).

14

**B.    The *Bluetooth* Factors Favor Final Approval**

The Ninth Circuit has held that when a settlement agreement is negotiated prior to contested class certification, a court must not only review an analysis of the *Hanlon* factors, but also be satisfied that the settlement did not result from collusion among the parties. *See Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, *8 (N.D. Cal. Feb. 11, 2016) (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011)).  Thus, courts examine the settlement for three subtle "warning signs" of collusion: "(1) whe[ther] class counsel receives a disproportionate distribution of the settlement, or [] the class receives no monetary distribution but counsel is amply awarded[;] (2) whe[ther] the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by the defendant …[;] and (3) whe[ther] the parties arrange for fees not awarded to revert to defendants rather than to be added to the class fund." *Destefano*, 2016 WL 537946, at *9.  Even where one or more of the signs outlined above is present, however, "the presence of these factors is in no way dispositive." *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1007 (N.D. Cal. 2015), *reconsideration denied*, 2015 WL 4735521 (N.D. Cal. Aug. 10, 2015).  Instead, "the *Bluetooth* factors are merely 'warning signs' that indicate the *potential* for collusion" and "the Court is merely obligated to assure itself that the fees awarded in the agreement were not unreasonably high in light of the results obtained for class members." *Id.*

Here, the first factor – whether class counsel receives a disproportionate distribution of the settlement – is clearly not problematic. As discussed in Plaintiff's Motion for Attorney's Fees, Costs, and Class Representative Service Award, the requested fee is in line with awards by other District and California Courts applying California law. *See* Mot. for Fees at pp. 2-3, 13-14. Notably, in the *Lusby*, *Tijero*, and *Cooley* cases, discussed above, district courts awarded a one-third fee even where class members received substantially less than the $880 gross average per-class member recovery in this settlement.

The second *Bluetooth* factor also does not weigh against final approval. Although the parties' agreement does contain a "clear sailing" provision, *see* Agreement at ¶ 3.1(a), "a 'clear

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

sailing provision does not signal the possibility of collusion where, as here, Class Counsel's fee will be awarded by the Court from the same common fund as the recovery to the class.'" *Smith v. Am. Greetings Corp.*, No. 14-V-02577-JST, 2016 WL 2909429, *7 (N.D. Cal. May 19, 2016) (quoting *In re High-Tech Employee Antitrust Litigation*, No. 11-CV-02509-LK, 2015 WL 5158730, *14 (N.D. Cal. Sep. 2, 2015)); *see also Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, *8 (N.D. Cal. July 11, 2014), *appeal dismissed* (Nov. 17, 2014) ("Under the second factor, clear sailing provisions generally do not raise concerns where, as here, the fees are to come from the settlement fund"); *compare In re Bluetooth*, 654 F.3d at 947 (warning of " 'clear sailing' arrangement[s] providing for the payment of attorneys' fees *separate and apart from class funds*, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class") (emphasis added).

Last, the third *Bluetooth* factor is inapplicable, as the Agreement does not include a "kicker" provision that would allow unclaimed funds to revert to Kindred. *See e.g.*, *Ebarle v. Lifelock, Inc.*, No. 15-CV-00258-HSG, 2016 WL 5076203, *11 (N.D. Cal. Sept. 20, 2016) (noting that "[unlike n *In re Bluetooth Headset*, the $68 million fund is non-reversionary" and "[b]ecause there is no 'kicker' contained in the agreement, remaining money in the Settlement Fund does not revert to Defendant and instead is redistributed on a pro rata basis to the Class"); *Spann v. J.C. Penney Corp.*, 2016 WL 5844606, *10 (C.D. Cal. Sept. 30, 2016) (noting that "the entire settlement amount will be distributed, and no funds will revert to defendant."); *Tadepalli v. Uber Technologies, Inc.*, No. 15-CV-04348-MEJ, 2016 WL 1622881, *9 (N.D. Cal., Apr. 25, 2016) ("The absence of a "kicker provision" in the parties' settlement and the fact that the class is receiving 100% of the fees incurred reduces the likelihood that the parties colluded to confer benefits on each other at the expense of class members").

Accordingly, the Settlement is free from collusion and should be approved.

//

//

16

## V.    CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant final approval to the Class Settlement.

Dated: March 2, 2021                    LAW OFFICE OF MATTHEW D. CARLSON


                                        By: _/s/ Matthew D. Carlson_ _____
                                            Matthew D. Carlson
                                            Attorney for Plaintiff