UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH STONEHOCKER,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>KINDRED HEALTHCARE OPERATING LLC, ET AL.,<br><br>　　　　Defendants. | CASE NO. 19-CV-2494-YGR<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART MOTION FOR ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS; JUDGMENT**<br><br>RE: Dkt. Nos. 65, 66 |

　　　　The Court previously granted a motion for preliminary approval of the Class Action Settlement in this matter on November 24, 2020. (Modified Order Granting Preliminary Approval of Class Action Settlement and Order Approving PAGA Settlement ("Preliminary Approval Order"), Dkt. No. 64.) As directed by the Preliminary Approval Order, on January 15, 2021, plaintiff filed her unopposed motion for attorney's fees, costs, and service award. (Dkt. No. 65.) Thereafter, plaintiff filed her unopposed motion for final settlement approval on March 2, 2021. (Dkt. No. 66.) The Court held a hearing on April 6, 2020.

　　　　Having considered the motion briefing, the terms of the Settlement Agreement, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the motion for final approval. The Court finds the settlement fair, adequate, and reasonable. The provisional appointments of the class representative and class counsel are confirmed.

　　　　The motion for attorney's fees, costs, and service award is **GRANTED IN PART**. The Court **ORDERS** that class counsel shall be paid $498,750.00 in attorney's fees and $12,140.18 in litigation costs and that class representative and named plaintiff Sarah Stonehocker shall be paid a $5,000.00 incentive award.

//

## I. BACKGROUND

### A. Procedural History

Plaintiff filed the putative class action complaint on February 14, 2019, alleging that defendant Kindred Healthcare Operating LLC's strict productivity standards resulted in plaintiff and other individuals clocking in hours for which they were not paid. (Dkt. No. 1-5.) Plaintiff's then-operative amended complaint alleges claims for (1) failure to pay for all hours worked; (2) failure to pay wages when due; and (3) unfair business practices under the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.). (*Id.*) Defendant denied plaintiff's allegations in their entirety. (Dkt. No. 1-7.)

Defendant filed an early motion for summary judgment on grounds that (i) plaintiff was bound by the judgment and dismissal entered in *Cashon v. Kindred Healthcare Operating, Inc., et al.*, Case No. 3:16-cv-04889-RS ("*Cashon*"), and thus, plaintiff's claims were barred by the doctrine of claim preclusion; and (ii) plaintiff released her right to bring the claims asserted in this action through the Class Action Settlement Agreement and Stipulation approved by the court in *Cashon*. (Dkt. No. 18.) The Court denied this motion on September 19, 2019. (Dkt. No. 30.)

Thereafter, the parties reached a settlement prior to class certification with the assistance of experienced mediator Tripper Ortman. The Settlement Agreement, attached hereto as **Exhibit 1**, the terms of which are incorporated herein unless specifically stated otherwise, defines the class as:

> [A]ll persons who are or were employed by one or more Defendants as non-exempt Skilled Clinicians to work at a skilled nursing facility in California at any time from February 14, 2015 through September 1, 2020.

(the "Settlement Class"). (Agreement ¶ 2.6.) "Skilled Clinicians" are all individuals who have held one or more positions in the job title list attached as Exhibit A to the Settlement Agreement. (*Id.* ¶ 2.52.)

For settlement purposes, plaintiff filed the second amended complaint, adding defendants Kindred Rehab Services LLC, Kindred Rehab Services, Inc., RehabCare Group East LLC, RehabCare Group East, Inc., American VitalCare LLC, and RehabCare Group of California LLC. This pleading alleges claims for: (1) failure to pay for all hours worked; (2) failure to furnish

accurate wage statements; (3) failure to provide compliant meal periods; (4) failure to provide compliant rest periods; (5) failure to pay wages when due; (6) failure to keep accurate employment records; (7) unlawful, unfair, and/or fraudulent business practices under the California Unfair Competition Law ("UCL"); and (8) penalties pursuant to the Labor Code Private Attorneys General Act of 2004, as amended ("PAGA") (Lab. Code §§ 2698 et seq.). (Dkt. No. 59.)

In its Preliminary Approval Order, the Court conditionally certified the Settlement Class and provisionally appointed Matthew Carlson as Class Counsel, plaintiff Sarah Stonehocker as class representative, and Simpluris Inc. as the class administrator. (Dkt. No. 64 ¶¶ 4–6.)

### B. Terms of the Settlement Agreement

Under the terms of the Settlement Agreement, defendant will pay $1,995,000.00 into a common settlement fund, without admitting liability. This amount includes attorney's fees and costs, the cost of class notice and settlement administration, the class representative's service award, and PAGA payment. The PAGA Payment was defined as:

> [A]n amount of One Hundred Thirty Thousand Dollars ($130,000) shall be allocated as the PAGA Payment. Ninety-Seven Thousand Five Hundred Dollars ($97,500.00), which is seventy-five percent (75%) of the PAGA Payment, shall be paid to the [California Labor and Workforce Development Agency]. The remaining Thirty-Two Thousand Five Hundred Dollars ($32,500.00), which is twenty-five percent (25%) of the PAGA Payment, shall be distributed to the PAGA Releasees, based on the number of PAGA Pay Periods worked by a PAGA Releasee, as a fraction of the total PAGA Pay Periods worked by al PAGA Releasees. . . .

(Agreement ¶ 3.1(c).) However, the fund is exclusive of the employer's share of payroll taxes.

#### 1. *Attorney's Fees and Costs*

Under the Settlement Agreement, Plaintiff's counsel agreed to seek up to $665,000.00 in attorney's fees and no more than $15,000.00 in litigation costs. The common settlement fund also includes a provision for $22,500.00 in settlement administration costs; and up to $5,000.00 to be paid to plaintiff Sarah Stonehocker as a service award in exchange for a general release of all claims against defendants.

//

//

3

### 2. *Class Relief*

After deductions from the common fund for fees, costs, and service incentive awards as well as the administration expenses, approximately $1,326,609.82 will remain to be distributed among the participating class members.[1] Class members will be paid based on the number of pay periods worked as a fraction of the total class pay periods worked by all class members. Dividing this amount across the 2,260 participating class members yields an average recovery of approximately $586.99 per class member. The Agreement provides that no amount will revert to defendant.

### 3. *Cy Pres/Remainder*

The Settlement Agreement provides that any residue funds will be distributed to the Court-approved *cy pres* beneficiary First Responders Children's Foundation Covid-19 Emergency Response Fund, with 95% of *cy pres* funds to benefit clinicians at skilled nursing facilities in California and 5% of *cy pres* funds to benefit clinicians at skilled nursing facilities in states other than California.

### 4. *Class Member Release*

In exchange for the settlement awards, class members will release claims against defendants as set forth in the Settlement Agreement at sections 4.3 and 4.4.

## C. Class Notice and Claims Administration

Pursuant to the Settlement Agreement, the Court appointed Simpluris to administer the fund and to contact the class members in the manner set forth therein and including the attachments contained within the Preliminary Approval Order.

Class members were given until February 19, 2021, to object to or exclude themselves from the Settlement Agreement. Out of 2,263 total class members, three persons filed timely requests to opt out of the Settlement Class.[2]

---

[1] $1,995,000.00 (gross settlement fund) – $498,750.00 (approved fee award) – $12,140.18 (approved cost award) – $22,500.00 (settlement administration expenses) – $5,000.00 (approved service award) – $130,000.00 (PAGA payment) = $1,326,609.82

[2] After filing the final opt-out list indicating two requests for exclusion (Dkt. No. 67), plaintiff subsequently filed an additional request for exclusion by an individual who had mailed her request to counsel's office. (Dkt. No. 68.) The request was timely and otherwise compliant with the terms of the Preliminary Approval Order. Defendants do not challenge this request.

## II. FINAL APPROVAL OF SETTLEMENT

### A. Legal Standard

A court may approve a proposed class action settlement of a class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027. The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

### B. Analysis

#### 1. *The Settlement Class Meets the Prerequisites for Certification*

The Court finds that the prerequisites of Rule 23 have been satisfied purposes of certification of the class members proffered through this settlement ("Settlement Class").

With respect to numerosity under Rule 23(a)(1), the Settlement Class includes 2,263 members, making it so numerous that joinder of all members is impracticable.

Rule 23(a)(2) commonality requires "questions of fact or law common to the class," though all questions of fact and law need not be in common. *Hanlon*, 150 F.3d at 1026. The focus of this

5

action is common to all class members, namely, whether defendants failed to pay all wages owed, including pay for off-the clock time.

Rule 23(a)(3) requires that the plaintiff show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Plaintiff and members of the Settlement Class were all Skilled Clinicians during the relevant time period making plaintiff's claims typical of class members.

With respect to Rule 23(a)(4), the Court finds the class representative and class counsel have fairly and adequately represented the interests of the Class. No conflicts of interest appear as between plaintiff and the members of the Settlement Class. Class Counsel has demonstrated that he is skilled in this area of the law and therefore adequate to represent the Settlement Class as well.

The Settlement Class further satisfies Rule 23(b)(3) in that common issues predominate and "a class action is superior to other available methods for fairly and efficiently adjudicating" the claims here.

### 2. Adequacy of Notice

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court approved the parties' proposed notice procedures when it granted preliminary

approval. Pursuant to those procedures, the Class Administrator provided class members with a Class Notice Packet mailed to all class members based upon last-known addresses provided by defendants. The packet included the long-form notice which provided the class member with a rough calculation of their estimated portion of the settlement based on the business records of the defendant and the option of disputing the same.

The class is now estimated to have 2,263 members. Of these class members, twelve packets were returned as undeliverable and reasonable follow-up efforts were not successful, resulting in a reach rate of 99.5%. Moreover, three persons timely completed opt out forms, resulting in an adjusted class member size of 2,260.

Based upon the foregoing, the Court finds that the Settlement Class has been provided adequate notice.

After deductions from the common fund for fees, costs, and service enhancement awards, settlement administration, and PAGA payment, approximately $1,326,609.82 will remain to be distributed among the participating class members. Class members will be paid based on the number of class pay periods worked as a fraction of the total class pay periods worked by all class members.[3] The Agreement provides that no amount will revert to defendant.

### 3. *The Settlement Is Fair And Reasonable*

As to the *Hanlon* factors, the Court finds that they indicate the settlement here is fair and reasonable.

Liability was contested and the settlement provides class members with a guaranteed and not insubstantial monetary award. There is risk that the evidence could have diminished the value of the claims. Defendant Kindred strenuously contested the allegations and would have persisted in their position to prove their claimed policy regarding off-the-clock work. If Kindred prevailed, plaintiff and the class members would not receive any amount. Proceeding to trial would have been costly and recovery was not guaranteed. Further, there is the possibility of protracted

---

[3] According to the declaration of the claims administrator, the average estimated payment is approximately $525.27 and the highest payment estimated at $2,354.37. (Dkt. No. 66-1.) These estimates are based on the requested amounts of fees and costs (as opposed to the fees and costs ultimately awarded here).

7

appeals.

The settlement occurred only after extensive litigation including summary judgment motion practice, pre-mediation exchange of requested information (including payroll and time clock data), and communications. Counsel for both parties are highly experienced. The record does not indicate collusion or self-dealing.

The Settlement Agreement appears to have been the product of arm's length and informed negotiations. The relief provided for the Class appears to be adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; and

(iii) the terms of any proposed award of attorney's fees, including timing of payment.

Moreover, the Settlement Agreement appears to treat Class members equitably relative to each other.

The reaction of the class was overwhelmingly positive. As noted, the Court received only three opt-outs and no objections. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.,* 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

### 4. *Other Findings*

**Notice to Government Agencies:** The parties provided the required notice to federal and state attorneys general under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b). (Dkt. No. 66-1 ¶ 14.) Notice occurred more than 90 days before the date of this order, as required by 28 U.S.C. § 1715(d).

### 5. *Certification Is Granted and the Settlement Is Approved*

After reviewing all of the required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be

proper. The Court grants class certification to the following Settlement Class:

> All persons who are or were employed by one or more Defendants as non-exempt Skilled Clinicians to work at a skilled nursing facility in California at any time from February 14, 2015 through September 1, 2020.

The following persons are excluded from the Settlement Class: all persons who timely excluded themselves from the Settlement Class, as identified in **Exhibit 2** hereto.

The *cy pres* recipient, First Responders Children's Foundation Covid-19 Emergency Response Fund, is **APPROVED**.

### III.   MOTION FOR ATTORNEY'S FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS

Attorney's fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h). Such fees must be found "fair, reasonable, and adequate" in order to be approved. Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963. "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.

The Court analyzes an attorney's fee request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–45 (citing *Vizcaino,* 290 F.3d at 1050–51.)

Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'"). Under the percentage-of-the-fund method, courts in the Ninth Circuit

9

"typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.  When using the percentage-of-recovery method, courts consider a number of factors, including whether class counsel "'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino*, 290 F.3d at 1047-50. "[T]he most critical factor [in determining appropriate attorney's fee awards] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

Here, Class Counsel requests an attorney's fee award of $665,000.00.  Class counsel contends that the attorney's fees sought amount to 33% of the total settlement value ($1,995,000.00) and reflect approximately an amount 2.39 times his lodestar totaling $274,440.00.  Defendants do not oppose the fee request.

Using the percentage-of-recovery method, the attorney's fees sought exceed the 25% federal benchmark.  Plaintiff maintains that because she "asserts only state law claims, California law, not Ninth Circuit law, sets the applicable standard for fees."  (Motion for Attorney's Fees, Costs, and Service Award, Dkt. No. 65, at 1 (offering authorities indicating some California courts apply a 33% benchmark).)  However, the Court finds an award of 25 percent of the common fund more reasonable.  This case was a follow-on case.  Moreover, while it "reflects the very positive result achieved for the class," this award is tempered by a measure of undue billing discussed below and "the lack of complex or novel issues."  *See Lopez v. Management and Training Corp.*, No. 17-CV-1624 (JTM), 2020 WL 1911571, at *8 (S.D. Cal. April 20, 2020) ("Analogous wage

and hour class action settlements in California district courts illustrate that courts have been known to award fees ranging from well below the federal 25 percent benchmark to amounts equal to or greater than the 33.33 percent being requested here."); *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) ("Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent.") (citing *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 n. 13 (2009) ("A fee award of 25 percent is the benchmark award that should be given in common fund cases.")).

Class counsel did not provide the Court with his detailed billings until requested by the Court at the hearing. Based on the time records submitted, the Court adjusts the lodestar to $243,780.00 for analytical purposes. Class Counsel calculated his lodestar by applying his $600 hourly rate to the 457.4 total hours spent working on this matter. However, the Court finds the hours to be slightly inflated. Analytically, the Court deducts 24.6 hours for time spent on a companion case and cuts 33 hours of unspecified "post fee motion work" in half.[4] Moreover, the Court applies a discounted rate of $300 hourly rate to 20 hours of travel time. Rarely would counsel be able to justify those amounts in a non-class context. These adjustments amount to a difference of $30,660.00. The Court otherwise finds that the hours claimed were reasonably incurred and that the rate charged is reasonable and commensurate with those charged by attorneys with similar experience in the market. The Court also finds that Class Counsel represented his clients with skill and diligence and obtained an excellent result for the class, taking into account the possible outcomes and risks of proceeding trial. Therefore, the appropriate lodestar is $243,780.00.

Application of the 25% benchmark ($498,750.00) yields a fee award of 2.04 times the adjusted lodestar ($243,780.00). Accordingly, the Court finds an award of attorney's fees in the amount of $498,750.00 to be fair, reasonable, and adequate.

---

[4] The spreadsheets submitted by Class Counsel list an estimated 75 hours of post-fee motion work. However, he also indicates that at the time of the filing of the fees motion, he had worked approximately 42 hours, resulting in a difference of 33 hours.

**B.     Costs Award**

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, class counsel seeks reimbursement for litigation expenses, and provides records documenting those expenses, in the amount of $14,343.70. Deducting $2,203.52 in costs from the companion case, the Court finds an award of $12,140.18 in costs reasonable, fair, and adequate.

**C.     Service Award**

The district court must evaluate named plaintiff's requested award using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, the plaintiff came forward to represent the interests of 2,263 others, with very little personally to gain. Plaintiff was deposed, compiled documents, regularly corresponded with counsel telephonically and by email, and took the substantial risk of litigation which, at a minimum, involves a risk of losing and paying the other side's costs. Because the laws are not self-enforcing, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others. Thus, the Court approves the requested incentive award payment for plaintiff Sarah

1  Stonehocker.

2  **IV.   CONCLUSION**

3  Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**. The motion for attorneys' fees, costs, and service awards is **GRANTED IN PART** as follows: Class Counsel is awarded $498,750.00 in attorney's fees and $12,140.18 in litigation costs.  Plaintiff Sarah Stonehocker is granted an incentive award of $5,000.00.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in accordance with the terms of the Settlement, the Modified Order Granting Preliminary Approval of Class Action Settlement filed on November 24, 2020, and this order.  This document will constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

The parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements no later than **August 20, 2021**.  The Court **SETS** a compliance deadline on **August 27, 2021** on the Court's 9:01 a.m. calendar to verify timely filing of the post-distribution accounting.

**IT IS SO ORDERED.**

This terminates Docket Nos. 65 and 66.

Dated: April 27, 2021

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE